## IN THE UNITED STATES DISTRICT COURT
## FOR DISTRICT OF KANSAS

| | |
|---|---|
| **Anthony Lee Kennon**<br><div align="right">Plaintiff</div><br>v.<br><br>**Daniel Ashley, in his individual capacity**<br>*<br>**Joshua Doncouse, in his individual capacity**<br>*<br>**Austin Spencer, in his individual capacity**<br>*<br>**Charles Smyser, in his individual capacity**<br>*<br>**The Lawrence City Commission, as the governing and legislative body of the City of Lawrence, Kansas including the Lawrence City Police Department**<br><div align="right">Defendants</div> | Case No. 5:24-cv-04034-JWB-BGS |

### VERIFIED AMENDED COMPLAINT

### INTRODUCTION

1. This is a civil rights action seeking damages for the violation of the plaintiff Anthony Lee Kennon's First, Fourth, and Fourteenth Amendment rights, stemming from the Lawrence City Police Department officers' May 1,. 2022, confrontation of Mr. Kennon in the parking lot of the apartment complex where he resided of which the defendant police officer Daniel Ashley improperly, deliberately, and repeatedly escalated because of Mr. Kennon's protected and non-threatening speech made in the presence of defendant Ashley that early morning.

1

2. The inability of defendant Ashley to listen to speech he found unpleasant and uncomplimentary erupted Ashley's knee-jerk snap decision to arrest Mr. Kennon ultimately resulting in these four officers, as well as the entire Lawrence police department, scrambling to come up with many conflicting reasons for Mr. Kennon's arrest.

3. In that early morning, officers had been present over a domestic violence call involving Mr. Kennon and a woman named Destiny Kennon resided with.  Officers found Mr. Kennon bruised and bloodied from the assault made upon him.  Mr. Kennon decided he wanted to leave the premises and the Lawrence officers agreed to assist Mr. Kennon in taking his belongings.

4. The officers had been present at the residence for approximately an hour in which the scene was peaceful, and Mr. Kennon had been dialoging with the officers peacefully.

5. At around 2:30 a.m., Mr. Kennon was loading up his belongings into one of the police vehicles, but it was determined by an officer that there was not enough room in the vehicle – "I don't have room to move your whole life man."  Mr. Kennedy told him "leave it right fucking here and give me my tools and I will get a ride."  The officer replied "all right" and Mr. Kennon said "can I get my tools dog?"  Mr. Kennon then took his property out of the vehicle and piled in on the sidewalk.

6. Mr. Kennon told the officers that his tools were in a car and that Destiny needed to open the car so he could get them.  The below is a snapshot from the officer's Axon body cam when this dialogue took place:



7. Defendant Seargent Ashley then arrives and is at the scene for approximately six minutes. At this point the officers had been on the scene nearly an hour. Mr. Kennon calls for a ride. Mr. Kennon calls Destiny to tell her to open the car so he can get his tools. She refuses to come down and open the car. She tells officers there are no tools in the car which was not true.

8. Mr. Kennon wants the officers to take pictures of his injuries as he told them he wanted to press charges. Mr. Kennon takes off his shirt and the officers begin taking pictures while Mr. Kennon tells Destiny that he is pressing charges.

9. Destiny changes her mind and comes down to open the car. Mr. Kennon tells defendant Ashley he's dumb, a "stupid-ass" and "you're a bitch" also saying he was "cowering down" to Destiny. He tells Ashley that she "isn't going to fuck you ever." He told Ashley that "you should have sent her bitch ass to jail." When the trunk is opened, his tools were there and said "was I lying?" He said "that's the coward shit that is life changing" because the officers were believing Destiny and not Mr. Kennon.

10. Mr. Kennon then made his first trip taking the tools to where he had previously stacked his personal items. The video snapshots simultaneously depicts the scene and the time from each officer's Axon video:









11. Defendant Ashley falsely stated in his report that Mr. Kennon threw the items at his feet. Instead, Mr. Kennon had placed those items in the same stack of his personal items on the sidewalk. Mr. Kennon returned to the car and made a second trip. The below simultaneous video snapshots depict that:









12. None of the four officers displayed any behavior that indicated any of Mr. Kennon's behavior to be threatening to anyone.

13. Mr. Kennon made a third trip.  The below simultaneous video snapshots depict that:









14. Mr. Kennon did not say anything to any of those officers that was physically threatening to their safety. But Mr. Kennon did glare and look at the officers when he put his personal belongings in the stack. Mr. Kennon told the officer "nothin in this gonna hurt you is there."

15. Defendant Ashley stated: Anthony, you challenge my officer again you're going to jail man." "The freedom of individuals verbally to oppose or challenge [official] action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state." *Houston v. Hill*, 482 U.S. 451, 462–63, (1987). The First Amendment protects "the freedom to express disagreement with state action, without fear of reprisal based on the expression ...." *McCurdy v. Montgomery Cnty.,* 240 F.3d 512, 520 (6th Cir. 2001).

16. Mr. Kennon continued walking away. At one of the points when Mr. Kennon reached the car defendant Spencer whispered "watch out." On the last trip, Mr. Kennon said (from a distance while not even facing defendant Ashley) "take me to

jail…take me to jail." The below simultaneous snapshots depict where Mr. Kennedy

was when that happened:









17. Defendant Ashley then stated "all right" and "let's go. Put your hands behind your back." The snapshots accurately depict the moment that happened:







18. Mr. Kennon stated "I'm here dog – challenge your officers?   What?" Defendant Ashley said "your language" – Mr. Kennon said "coward – you're a coward." Defendant Ashley said "your under arrest for disorderly conduct… for all the language you used against both these women…language you used towards us."







19. Defendants wrenched and squeezed Mr. Kennon's arms backwards while handcuffing and Mr. Kennon told said "did you see that" and told them "you're a coward-ass bitch."



20. When defendant officers placed Mr. Kennon in the vehicle, a panel dividing the back and front seat areas had been damaged.  In their reports, the defendants falsely claimed that Mr. Kennon had damaged the panel.

21. Mr. Kennon yelled briefly from the back seat being handcuffed behind his back and the seat belted in but then stopped.



22. Defendant Ashley immediately made a decision to retaliate again against Mr. Kennon by telling the officers to remove Mr. Kennon from the vehicle (even though Mr. Kennon was still and calm)



23. Ashley orders a WRAP restraint in order to torment and punish Mr. Kennon. They force Mr. Kennon to the ground:



24. The officers also used unnecessary pain actions pinching and squeezing Mr. Kennon:













25. The officers continued to inflict pain upon Mr. Kennon forcing him into unnatural and unnecessary positions during the restraint in order to cause Mr. Kennon further physical and psychological pain in being bound in the straight-jacket device:



26. When they placed a helmet on Mr. Kennon's head officers would push their fingers

through the helmet inflicting pain upon Mr. Kennon:





27. Even though Mr. Kennon was defenseless and completely compliant, the defendants continued to inflict pain using "pressure points" specifically designed to inflict pain while others watched, assisted, and participated in:





28. Mr. Kennon yelled in pain and stated "you jammed your thumb into my throat" to which an officer said "it's a pressure point buddy."



29. The defendants' torture and torture tactics were directed upon Mr. Kennon because he verbally insulted defendant Ashley or the other officers with protected speech and continued as they forced Mr. Kennon to move and sit in unnatural positions while in this straight-jacket device. Mr. Kennon cried out in pain moaning and looking for help from any officer wailing "please":



30. Mr. Kennon continued to wail in torment pleading for any of the officers to stop the torture and help him saying "help":





31. Mandibular angle is a procedure in which an individual places a thumb or finger immediately behind the lower portion of a person's ear and pushes forcefully forward at a forty-five degree angle. The officers exerted the wrong kind of continuous 14 seconds of ongoing pressure points as demonstrated below:





32. Instead of using a pointed finger to torture plaintiff, the defendants used an improper grab technique.  And while the pressure pain points were being inflicted upon Mr. Kennon, no one was giving Mr. Kennon any directives – no instructions to follow.  Ashley put all his weight down on Mr. Kennon's feet and legs which was excessive. Even though Mr. Kennon cried out that "I'm not moving" there was nothing Mr. Kennon was told that he could do to alleviate the torture being inflicted upon him. He asked why they were doing this and was told "you have to stop screaming" which screaming in pain would have stopped had the continuous infliction of the pressure points stopped.

33. Mr. Kennon said he needed to go to the hospital.   They each maliciously and deliberately hurt Mr. Kennon physically and psychologically without any legal reason to do so.







34. None of the officers in their initial reports reported any use of force as required by policy.  Officer Doncouse did not report use of force but did say that Mr. Kennon was compliant in coming out of the vehicle and going into the wrap.  However, defendant Ashley, four months later, filed his report, after police complaints had been filed and internal investigation conducted, he watched the body cam and then finally admitted that he "applied pain compliance pressure behind his right jaw" and that "upon successful application of the chest restraint, I released pressure."

35. Lawrence City Officers Daniel Ashley, Joshua Doncouse, Austin Spencer, Charles Smyser, as well as Chief of Police Rich Lockhart and his Office of Professional Accountability, conspired to conceal, justify, or otherwise provide misleading false facts aimed at providing a false narrative justifying each defendant's actions as they described in their incident reports.

36. The Office of Professional Accountability conducted a sham investigation.  Chief of Police Rich Lockhart claimed the Office of Professional Accountability had determined that "Sergeant Ashley did not violate department policy."  He stated that "the allegation of excessive use of force has been exonerated and the allegation of discourtesy has been unfounded."  Lockhart made the same determination and findings concerning the actions of defendant Smyser.

37. Lockhart did not discipline or admonish any of the defendants for their actions as Lawrence police officers for the actions described in this Complaint.

38. If Chief Lockhart's statements that defendants Smyser and Ashley were being compliant with all of the City of Lawerence Police department policies as Lockhart

affirmatively represented, this means that the City's policy and custom caused the Constitutional violations and that defendants' actions "fairly aid to represent official policy."

39. Defendant Smyser's report omitted critical facts demonstrating that his claim that Mr. Kennon was arrested for committing "disorderly conduct" was false.

40. Defendant Smyser does accurately state the real reasons why Mr. Kennon was arrested and mistreated – because Mr. Kennon called him names – told him he was a "bitch" and stared at him calling him a "coward." Speech characterized as profane as used by Mr. Kennon did not constitute fighting words. *See Wood v. Eubanks*, 25 F. 4th 414, 423-25 (6th Cir. 2022) (defendant calling police "fucking thugs," "motherfuckers," "bitch ass fucking pigs," "dirty rat bastards," and "pussies with badges" were not fighting words).

41. Defendant Doncouse omitted critical facts in his report and also made false statements that Mr. Kennon "was becoming aggressive toward Officer Smyser."

42. Defendant Ashley omitted critical facts and made false statements in his report claiming "Kennon threw these items at Officer Smyser's feet, leaned n closely toward Officer Smyser, and stared Officer Smyser down." He falsely claimed that Mr. Kennon "approached Lawrence Police Officer Smyser Anthony stared at Officer Smyser intently as he walked up, throwing the items on the ground at Officer Smyser's feet in a violent manner." He falsely claimed that Mr. Kennon "chested up" to Officer Smyser as though Mr. Kennon made physical contact or that he was inches away from Officer Smyser.  He falsely claimed that the "plexi-glass was broken when

Anthony smashed his head into it." He falsely claimed that the "partition was damaged by Kennon." He falsely claimed that Mr. Kennon "forcefully and violently jerked his arm away from" his grip. He falsely claimed that "he began to thrust his head backward and push his back against officers' attempts to control him." He falsely claimed that Mr. Kennon had engaged in "disorderly conduct."

43. Defendant Ashley does admit why he arrested Mr. Kennon – because Mr. Kennon called Officer Smyser names which were not fighting words – as defendant Ashley falsely claimed. Defendant Ashley admits he arrested Mr. Kennon for name calling and then words "directed to Destiny" and defendant Smyser in the parking lot – all of which was protected speech. Mr. Kennon's statements made to the officers were not "fighting words" within the legal meaning of K.S.A. 21-6203(a)(3). *See State v. Dotson*, 133 Ohio App.3d 299, 301, 303 (7th Dist.1999) (not "fighting words" to call various police officers "motherfuckers"); *Chillicothe v. Lowery*, 4th Dist. Ross No. 97 CA 2331, 1998 WL 396316, *1,8 (July 13, 1998) (saying "fuck you" to police officers and repeatedly calling them "motherfuckers" did not constitute "fighting words"); *see also State v. Baccala,* 326 Conn. 232, 251-256 (Conn. 2017) (calling a store manager a "fat ugly bitch," and worse, and saying, "fuck you, you're not a manager," were not "fighting words"; *People in the Interest of R.C.,* 411 P.3d 1105, 2016 COA 166, ¶ 26-34 (Colo.App.2016) (rejecting an argument that the term "cocksucker," "by its mere utterance qualifies as fighting words").

44. The reports were falsified to cause and support Mr. Kennon's arrest and prosecution.

45. Defendants further retaliated against Mr. Kennon by putting him into a WRAP restraint where they could inflict further pain and torment upon Mr. Kennon.  They justified this as purportedly keeping Mr. Kennon safe which was false and a pretextual community-caretaking rationale. *Cady v. Dombrowski,* 413 U.S. 433, 441 (1973);  *United States v. Ibarra*, 955 F.2d 1405, 1409 (10th Cir.1992).

46. The facts do not demonstrate any reasonable suspicion of criminal activity on the part of Mr. Kennon yet the defendants each engaged in an unnecessary rapid escalation of force against him.  Merely because Mr. Kennon told defendant Ashley to "arrest me" is not any probable cause for arrest.  "A person approached by law enforcement is entitled to ignore his interrogator and walk away." *United States v. Mendenhall*, 446 U.S. 544, 554 (1980).

47. The facts, including photographic, audio, and video evidence show numerous Lawrence Police policy violations which not only exposed Mr. Kennon to enhanced exposure to danger, but resulted in his physical and emotional injuries.

48. Defendants ignored Mr. Kennon's calm demeanors and conversations. Instead, they first watched then help defendant Ashley unreasonably arrest Mr. Kennon because he had offended Ashley and the other officers with protected speech.

49. These facts will show that the actions taken by these defendants were intentional and retaliatory.

50. Because of an absence of probable cause, any use of force was unreasonable.

51. Mr. Kennon plausibly alleges violations of clearly established Constitutional rights to be free from false arrest, malicious prosecution, and excessive use of force.

52. As Dr. Brent E. Turvey has stated, "these types of retaliatory arrests are often referred to by law enforcement, in court rulings, and in the criminological literature as the imaginary crime of 'contempt of cop.'"

53. Plaintiff seeks compensation for the dignitary, economic, and emotional injuries he suffered as a result of the unlawful seizure and meritless charges brought against him. Plaintiff seeks punitive sanctions against the individual officers to punish them for their callous disregard of his Constitutional rights and to deter them from this type of misconduct in the future.

## JURISDICTION AND VENUE

54. This civil rights action raises federal questions under the United States Constitution, particularly the First, Fourth, and Fourteenth Amendments, and the Civil Rights Act of 1871, 42 U.S.C.§ 1983.

55. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343, and 1346, as this action challenges the defendants' violation of the plaintiff's civil rights pursuant to 42 U.S.C. § 1983.

56. Venue lies in this Court pursuant to 28 U.S.C. § 1391, as a substantial part of the event and omissions giving rise to the claims occurred in this judicial district.

## THE PARTIES

57. Plaintiff Anthony Lee Kennon is a natural person, citizen of Kansas, and legal resident of Douglas County, Kansas.

58. The Lawrence City Commission, as the governing and legislative body of the City of Lawrence, Kansas. The Lawrence City Police Department is a department of the

City of Lawrence, Kansas. The City of Lawrence was at all times relevant to this Complaint responsible for its employees, including the employees of Lawrence Police Department. The City of Lawrence is charged under the law with the duty of hiring, supervising, training, disciplining, and establishing policy such that the conduct of its employees will conform to the Constitutions and laws of the State of Kansas and of the United States of America.

59. At all times relevant to this cause, Defendant Officers either acted in conformance with policy pertaining to, among other things, investigation, arrests, and use of force, as set by Lawerence Police Policy, as well as acting within the course and scope of their employment or did not act in conformance due to lack of training and oversight.

60. Charles Smyser was employed by the Lawrence City Police Department at the time described in this Complaint. Defendant Smyser is sued in his individual capacity.

61. Austin Spencer was employed by the Lawrence City Police Department at the time described in this Complaint. Defendant Spencer is sued in his individual capacity.

62. Joshua Doncouse was employed by the Lawrence City Police Department at the time described in this Complaint. Defendant Doncouse is sued in his individual capacity.

63. Daniel Ashley was employed by the Lawrence City Police Department at the time described in this Complaint. Defendant Ashley is sued in his individual capacity.

## MORE FACTS

64.  At the time of the events in question, it was clearly established that a Lawrence City police officer may not use force on Mr. Kennon who is complying with a command. *See Newman v. Guedry*, 703 F.3d 757, 761-64 (5th Cir. 2012) (objectively unreasonable for officers to injure a man whose "behavior [does] not rise to the level of active resistance").

65. Mr. Kennon was not trespassing or acting unlawful and defendants did not have a reasonable suspicion to detain Mr. Kennon.

66. Mr. Kennon's purported lack of cooperation or lack of response to defendant Ashley's statements or questions does not factor into any reasonable suspicion analysis.  *Schreiner v. Hodge*, 315 Kan. 25, 504 P.3d 410, 419 (2022); *State v. Andrade-Reyes*, 309 Kan. 1048, 1057, 442 P.3d 111 (2019).

67.  Mr. Kennon has a Fourth Amendment right to be free from an unreasonable stop or seizure.

68. Mr. Kennon never prevented any of the defendant officers from performing their official duties in the apartment or the parking lot as described in this Complaint.

69. When Mr. Kennon was put into a WRAP restraint, he was handcuffed, had an ankle strap that strapped his ankles together, a leg restraint, and was being placed in a chest restraint and subsequently in a helmet.

70. Mr. Kennon was unable to walk or move due to the multiple different restraints that had been placed on him. Mr. Kennon was cooperative, calm and obeying all commands that were given to him.

71. Despite there being no command to which Mr. Kennon could comply with, and no disobedience of prior commands, defendant Ashley employed his knee and weight, and also another deliberately painful mandibular angle maneuver multiple times upon Mr. Kennon.

72. Mr. Kennon suffered then and continues to suffer with post traumatic syndrome, heart issues, and as well as other residual effects due to the combination of the psychological torment, physical straight-jacket treatment, and the applied force with which the mandibular angle was applied to Mr. Kennon repeatedly.

73. The Lawrence Police Department has mandated Pain Compliance Techniques set forth in its policy manual at 300.3.4. It provides the following:

300.3.4 PAIN COMPLIANCE TECHNIQUES
Pain compliance techniques may be effective in controlling a physically or actively resisting individual. Officers may only apply those pain compliance techniques for which they have successfully completed department-approved training. Officers utilizing any pain compliance technique should consider:
a. The degree to which the application of the technique may be controlled given the level of resistance.
b. Whether the individual can comply with the direction or orders of the officer.
c. Whether the individual has been given sufficient opportunity to comply. The application of any pain compliance technique shall be discontinued once the officer determines that compliance has been achieved.

74. In the alternative to Chief Lockhart's claim that Officer Ashley's application of the mandibular angle did conform to Pain Compliance Technique, it is alleged in the alternative that it did not conform to the Pain Compliance Techniques set forth in the policy manual.

75. All four of the officers at the scene completed reports of the incident.

76. The Lawrence Police Department has a policy that mandates that all officers make an accurate report of any and all use of force, and it is set forth at 300.5, which provides the following:

> 300.5 REPORTING THE USE OF FORCE
> Any use of force by a member of this department shall be documented promptly, completely, and accurately in an appropriate report, depending on the nature of the incident. The officer should articulate the factors perceived and why he/she believed the use of force was reasonable under the circumstances.

77. Defendants Doncouse, Spencer and Smyser all completed reports on May 1, 2022.

78. None of the officers' reports reflect that any use of force was utilized in placing Mr. Kennon in the WRAP restraint system.

79. Defendant Ashley did not complete a report until September 2022.

80. The Lawrence Police Department has a policy, 300.2.1, that if any one of its officers see an inappropriate use of force, the officer is to intercede when in a position to do so, and to report the unreasonable use of force.

81. All three officers that witnessed defendant Ashley's use of the mandibular angle when there was no command to which Kennon could respond failed to intercede when they were in a position to do so.

82. All three officers that witnessed defendant Ashley's use of the mandibular angle when there was no command to which Kennon could respond failed to report defendant Ashley's unreasonable use of force.

83. Each defendant understood that pain compliance techniques are not to be used at all upon a citizen when no probable cause exists to arrest or upon an arrested person unless there is an objective to be achieved by the officers, a command is given by the

officers, and the detainee can comply with the command. The use of pain compliance techniques in this matter was only utilized to retaliate and inflict pain upon Mr. Kennon.

84. In this case, the use of the mandibular angle, as well as each defendant's aiding and abetting that use, was done with malice and the only purpose for such use of force was to inflict pain upon Mr. Kennon.

85. The defendants fabricated charges as a means to justify their unlawful arrest and excessive force. A complaint was filed against Mr. Kennon alleging four counts: domestic battery, battery, disorderly conduct, and interference with law enforcement in Douglas County District Court Case Number 2022-CR-000457.

86. Mr. Kennon's actions did not meet the mens rea or actus reus elements of domestic battery, battery, disorderly conduct, and interference with law enforcement as described in Douglas County District Court Case Number 2022-CR-000457.

87. Because the charges against Mr. Kennon in Douglas County District Court Case Number 2022-CR-000457 were meritless and clearly fabricated, they were each dismissed by the State on December 21, 2022.

## FIRST CAUSE OF ACTION
### RETALIATION AND RETALIATORY ARREST FOR EXERCISE OF PROTECTED SPEECH
### (42 U.S.C. § 1983)
### (AGAINST ALL DEFENDANT OFFICERS)

88. Each defendant was "motivated by improper considerations" such as "the desire to prevent the exercise of a constitutional right." *Bryan v. City of Madison*, 213 F.3d 267, 277 (5th Cir. 2000).

89. Defendants singled out Mr. Kennon because he called the defendants names in their presence when the defendants allowed plaintiff and others who have name called them without being arrested.

90. "Singling out one individual, banning his (perhaps disfavored) speech, and essentially preventing him from engaging in a form of civil discourse that is available to everyone else ... is unreasonable." *McBreairty v. Sch. Bd. of RSU 22*, 616 F.Supp.3d 79, 96 (D. Me. July 20, 2022).

91. The defendants each ratified this confrontation and arrest of Mr. Kennon on private property. Each made an affirmative approval of those decisions of the defendants described in this Complaint. Each defendant further ratified those decisions by failing to meaningfully investigate and punish the unconstitutional conduct.

92. An inference of policy or custom may be drawn from a failure to take remedial action after a constitutional violation. *See Larez v. City of Los Angeles*, 946 F.2d 630 (9th Cir.1991).

93. Defendants had a policy or custom of viewpoint discrimination from the failure of the City or the defendant police supervisors to take any remedial steps after the violation. *See Larez; Grandstaff v. City of Borger*, 767 F.2d 161 (5th Cir. 1985).

94. At the time of the arrest, Plaintiff Kennon was engaged in constitutionally protected activity.

95.  Defendant Officers knew that Plaintiff's conduct did not violate Kansas state law.

96. Defendant Officers knew that Plaintiff's conduct was affirmatively protected by federal law.

97. The defendant Officers' decision(s) to arrest and initiate prosecution against the plaintiff came directly in response to and because of Plaintiff's reasonable exercise of his constitutionally protected rights under the First Amendment.

98. Defendant Officers sought to punish Plaintiff for his speech. As a result, the plaintiff suffered monetary damages in attorney fees defending against the prosecution, emotional, other economic, and dignitary injuries.

99. Plaintiff has lost confidence in his ability to assert the rights guaranteed to him the Constitution of the United States of America. Plaintiff fears that officers will continue to retaliate/punish him for asserting his rights in the future.

100. Such actions by Defendant Officers, while acting under color of state law, deprived Plaintiff of the rights, privileges, liberties, and immunities secured by the Constitution of the United States of America, including the right to record police officers engaged in official duties while in public. These deprivations proximately caused Plaintiff's loss of liberty, emotional distress, and other harms associated with retaliatory arrest.

## SECOND CAUSE OF ACTION
### 42 U.S.C. §1983 FOURTH AMENDMENT VIOLATION – UNLAWFUL ARREST/FAILURE-TO-INTERVENE
### (AGAINST ALL DEFENDANT OFFICERS)

101. Plaintiff repeats and realleges each of the allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

102. It is not necessary that a police officer actually participate in the use of excessive force in order to be held liable under section 1983. Rather, an officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force, can be held liable for his nonfeasance.

103. The defendants claimed Mr. Kennon's post-arrest conduct justified the arrest. But Mr. Kennon's post-arrest conduct cannot supply the probable cause necessary to initiate the arrest. *See Davis v. City of Apopka*, 78 F.4th 1326, 1333 n.3 (11th Cir. 2023) ("Probable cause is measured at the time of the arrest, not at some time before or after").

104. The cited arresting officers' post-arrest statements are *post hoc* decision-making which together indicate pretext.

105. Mr. Kennon was present on a public area, if not entirely private property.

106. Defendants knew that the plaintiff's specific conduct did not violate any Kansas or Federal law in lawfully observing or recording their activities.

107. Defendants Doncouse, Spencer and Smyser were all present and witnessed the actions of defendant Ashley.

108. Prior to the arrest, there was no crime committed by Mr. Kennon, no emergency, nor did Mr. Kennon threaten, or pose a threat, to any officer.

109. Defendants Doncouse, Spencer and Smyser failed to take reasonable steps to protect Mr. Kennon from defendant Ashley's unlawful arrest and unlawful use of excessive force.

110. The Chief of Police Lockhart has further justified these actions by not disciplining any of the defendants or in admitting fault.

111. Based on their training regarding First Amendment protections, the defendants each knew that simply because Mr. Kennon said "arrest me" did not constitute any probable cause to arrest Mr. Kennon and that saying "arrest me" was Constitutionally protected activity.

112. Despite knowing this, the defendants arrested Mr. Kennon in retaliation, claiming pretextually that Mr. Kennon did other things that justified the unlawful arrest.

113. At any time during the interaction with Plaintiff or the subsequent booking process, Defendants Doncouse, Spencer and Smyser had the opportunity to intervene but failed to do so.

114. Instead of intervening to prevent the unlawful arrest of the plaintiff, all the defendant Officers either chose to participate in the arrest the plaintiff or participate in that arrest without possessing any information that Mr. Kennon had committed any crime.

115. The actions as described herein of Defendant Officers, while acting under color of state law, deprived Plaintiff of the rights, privileges, liberties, and immunities secured by the Constitution of the United States of America, including the right to freedom from unreasonable search and seizure.

### THIRD CAUSE OF ACTION
#### EXCESSIVE FORCE
#### (42 U.S.C. § 1983)
#### (AGAINST ALL DEFENDANTS)

116. Plaintiff repeats and realleges each of the allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

117. Plaintiff makes alternative excessive force claims. Plaintiff posed no risk of harm to the defendant Officers.

118. Defendant Ashley lacked probable cause to approach, stop, or to arrest Mr. Kennon.  Any force used by defendants was excessive because the stop and arrest were unlawful and there was no basis for any threat or any use of force.  *Richmond v. Badia*, 47 F.4th 1172, 1180 (11th Cir. 2022).

119. If a jury finds the arrest unconstitutional, the use of force and the search were unconstitutional. This becomes elements of damages for the § 1983 violation.

120. Alternatively, even if the arrest of Mr. Kennon was supported by probable cause, the force used in effectuating the arrest remains excessive.

121. The force was not reasonably proportionate to the need for that force given the totality of the circumstances facing the defendant Officers prior to that force. There was no physical aggression or resistance shown by Mr. Kennon prior to the use of force.

122. Defendants placing Mr. Kennon in unnatural positions without verbal commands itself caused Mr. Kennon pain in which he was unsure and unable to accomplish those physical feats.

123. Sticking their fingers into Mr. Kennon's throat or through his helmet, and then shaking his head, was excessive force.

124. Because Mr. Kennon had not been instructed or knew what was expected, he was punished by defendant Ashley repeatedly using his cruel and malicious mandibular angle gripping and poking similar to electrified cattle prods.

125. As such, the use of force by the defendants Ashley, Doncouse, Spencer and Smyser was unjustified, and demonstrated deliberate indifference to his constitutional civil rights.

126. Further, after the unwarranted aggressive grabbing of Mr. Kennon's arms, pain pressure maneuvers, they each restrained Mr. Kennon to the ground and restricted his movement.

127. Prior to the excessive use of force, the plaintiff Kennon posed no risk of harm to Defendants Doncouse, Spencer, Smyser, or Ashley.

128. The use of force upon the plaintiff Kennon was unjustified, constituted an unreasonable and excessive use of force, and demonstrated deliberate indifference to his constitutional civil rights.

129. There was gratuitous use of force by defendants Ashley, Doncouse, Spencer and Smyser because Mr. Kennon was compliant when he was told he was under arrest and did not resist the arrest, was compliant coming out of the vehicle and during the WRAP strait jacket technique.

130. When Mr. Kennon was booked into jail, he remained in handcuffs for five hours.

131. In addition, without cause or justification all of the defendants, including Defendant City and Chief of Police Lockhart, contributed to, coordinated with, or otherwise supported the defendants Ashley, Doncouse, Spencer and Smyser using excessive force upon the plaintiff Anthony Lee Kennon.

132. By supporting, contributing, or otherwise enabling defendant Ashley, Spencer, and Smyser actions, the defendant Doncouse allowed an excessive, unnecessary, and disproportionate use of force to be inflicted upon Plaintiff Kennon.

133. Defendant Ashley was therefore malicious, reckless, callous and acted with deliberate indifference to Plaintiff Kennon's rights.

134. Defendant Doncouse was therefore malicious, reckless, callous and acted with deliberate indifference to Plaintiff Kennon's rights.

135. Defendant Spencer was therefore malicious, reckless, callous and acted with deliberate indifference to Plaintiff Kennon's rights.

136. Defendant Smyser was therefore malicious, reckless, callous and acted with deliberate indifference to Plaintiff Kennon's rights.

137. The battery, detention, and arrest of this plaintiff was the result of conduct that was reckless, malicious, and deliberately indifferent to Mr. Kennon, and in depriving him of his constitutional rights.

138. All of the named officers in this Complaint, including the defendant Officers, while acting under color of law as authorized officers and agents of the City of Lawrence and the Lawrence Police Department, caused a constitutional deprivation

of the rights of this plaintiff under the Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution.

139. The actions alleged in this Complaint directly and proximately resulted in injury to the plaintiff.

140. As a direct result of the grossly negligent misconduct of each defendant as set out in this Complaint and associated deliberate indifference, this plaintiff was injured and is entitled to recover damages flowing from the deprivations of the plaintiff's constitutional rights under the Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution.

141. Plaintiff is entitled to attorney's fees expended in this litigation pursuant to 42 U.S.C. Section 1988.

WHEREFORE, Plaintiff demands judgment and compensatory and punitive damages against each Defendant, and in addition demands attorney's fees and costs pursuant to 42 U.S.C. Sections 1983 and 1988 and demands trial by jury on all issues so triable.

## FOURTH CAUSE OF ACTION
### MALICIOUS PROSECUTION UNDER 42 U.S.C. SECTION 1983 AGAINST DEFENDANT OFFICERS

142. Plaintiff repeats and realleges each of the allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

143. Plaintiff was charged with domestic battery, battery, disorderly conduct, and interference with law enforcement in Douglas County District Court Case Number 2022-CR-000457.

144. After arresting the plaintiff Kennon, each of the defendant Officers caused a judicial proceeding to be commenced against Mr. Kennon by the filing of reports and information in Douglas County Kansas.

145. No reasonably cautious police officer in the position of the Defendant Officers would have believed that Mr. Kennon could be arrested for saying "arrest me" or in calling officers names.

146. Said judicial proceeding was instituted by Defendants without probable cause as Mr. Kennon did not commit a crime in the officers' presence or otherwise.

147. A reasonable inference from the lack of probable cause, combined with the AXON videos, photographic snapshots taken from those videos, the reports made by these defendants, and the statements made by these defendants preceding the arrest, during the arrest, and after the arrest, that each of the Officer defendants acted with malice when Mr. Kennon was unlawfully arrested, and initiated the criminal prosecution by booking Mr. Kennon.

148. As a result of each of the defendant's respective conduct described in this Complaint, the plaintiff had to endure jail, along with the stress and humiliation of dealing with an unfounded criminal prosecution, and the psychological and physical trauma.

149. The actions as described herein of these defendant officers, while acting under color of state law, deprived Plaintiff of the rights, privileges, liberties, and immunities secured by the Constitution of the United States of America, including the right to freedom from wrongful prosecution as guaranteed by the Fourth Amendment to the

Constitution of the United States of America, made actionable pursuant to 42 U.S.C. § 1983. These deprivations proximately caused Plaintiff's loss of liberty, emotional distress, and other injuries associated with malicious prosecution.

<div align="center">

**FIFTH CAUSE OF ACTION**
**NEGLIGENT FAILURE TO TRAIN AND**
**SUPERVISE UNDER 42 U.S.C. SECTION 1983**
**AGAINST DEFENDANT CITY OF LAWRENCE**

</div>

150. The plaintiff hereby realleges and incorporates by reference the allegations contained above.

151. All conditions precedent to filing this action have been met by the plaintiff or have been waived by the City of Lawrence and the City of Lawrence Police Department.

152. Prior to the December 21, 2022, dismissal of Mr. Kennon's criminal charges, considerable information pointing in the direction of significant and outrageous police misconduct by these defendants had come to the City and the Douglas County prosecutor's attention. Arresting a person for name calling officers or saying "arrest me" is truly outrageous police misconduct. The Office of Professional Accountability obtained damning evidence showing outrageous police misconduct which the City was well aware of.

153. All relevant ethical authorities restrict prosecutors from threatening, presenting, or proceeding with criminal charges when the prosecutor knows that the charges are not supported by probable cause. Prosecutors are not allowed to enter release-dismissal agreements when charges are not supported by probable cause in the first instance.

154. The defendant City recognized its liability and wrongdoing by offering to Mr. Kennon a release-dismissal agreement – dismiss the criminal charges in exchange for Mr. Kennon agreeing not to sue the defendants.  Mr. Kennon did not agree to this.

155.  Justice is not served when a criminal defendant such as Mr. Kennon is asked to relinquish his civil and constitutional rights in exchange for a prosecutor's agreement to dismiss criminal charges that the prosecutor has already concluded lack merit.

156. On May 1, 2022, the defendant Officers were acting within the course and scope of their employment as City of Lawrence police officers.

157. The responsibilities related to De-Escalation with respect to The Lawrence PD are clearly written and effectively defined in the Lawrence PD Policy Manual.

158. This incident involved the defendants escalating to the third level of force (Empty-Hand Control/ Pain Compliance /Detention and Arrest) without issuing clear verbal commands to Mr. Kennon. There were no attempts to "safely engage in active communication and listening techniques" in order to de-escalate this contact were made.

159. No defendant explained to Mr. Kennon exactly what he expected prior to the use of the WRAP procedure – there was no warning to Mr. Kennon as to the continuation of any behavior would warrant an escalation to the WRAP.

160. Rather, defendant Ashley, unknown to Mr. Kennon, orders WRAP without any attempt to communicate clear lawful orders or information to this plaintiff. This was all done in the context of "officer rage."

161. The hyper-escalation of use of force in this case occurred without clear communication between Officers and Mr. Kennon; and without clear and consistent communication or messaging within the command structure at the scene. It also occurred without consideration of de-escalation.

162. The actions against the plaintiff Kennon was selective – targeted solely towards Mr. Kennon when others who had name called or said "arrest me" in doing the same things were not. The hyper-escalation of force was a result of the personal animosity towards Anthony Lee Kennon.

163. The City and its Police Department failed to properly train and supervise police officers in how to handle Mr. Kennon's presence or how to, if at all, respond to his statement "arrest me" as well as the use of force.

164. The named officers in this Complaint breached the duties owed to this plaintiff when they each failed to adhere to accepted law enforcement standards and practices for detaining and arresting subjects.

165. The City failed to properly train and supervise its officers as to its Policy on probable cause for arrest, protected speech, and name calling directed towards police.

166. The City failed to properly train and supervise its officers as to its Policy on alternative non-violent tactics to decrease the intensity of a situation, improve decision-making, improve communication, reduce the need for force, and increase voluntary compliance.

167. The City has ratified and approved the actions of each of the defendants as the City Police Department and these defendants continue defending and justifying all of that conduct in Mr. Kennon's criminal proceedings.

168. Defendant City of Lawrence and its Police Department owed Plaintiff, as well as all citizenry, a duty of care to hire and retain and supervise competent, law-abiding officers, as well as to enact policies that ensure that officers do not arrest citizens because of bias or without probable cause or use excessive force against civilians.

169. Defendant City of Lawrence breached its duty of care to Plaintiff by hiring and retaining, and improperly supervising each of the named City Officers in this Complaint.

WHEREFORE as a proximate and direct result of the negligence of the City of Lawrence, Plaintiff suffered severe mental and emotional distress arising from fear of incarceration and the humiliation, shame, embarrassment, and disgrace from detention, interrogation, arrest, booking, fingerprinting, and search of his body, bodily injury resulting in physical pain and suffering and diminished health, anxiety, mental pain and suffering, loss of the capacity for the enjoyment of life, loss of earnings, and diminution and loss of the ability to earn money which are either permanent or continuing to this day and are likely to continue into the future.

## PRAYERS FOR RELIEF

170. As to all counts, Defendants, under color of law, have deprived and continue to deprive the plaintiff of the right to associate, and free speech in violation of the First, Fourth, and Fourteenth Amendments to the United States Constitution.

Accordingly, this plaintiff is damaged in violation of 42 U.S.C. § 1983, and, therefore, is entitled to damages; declaratory and preliminary and permanent injunctive relief against continued enforcement and maintenance of the defendants' unconstitutional customs, policies, and practices; and attorney fees and expenses pursuant to 42 U.S.C. § 1988.

171. That as a direct and proximate result of the aforementioned unlawful conduct and omissions of each of the defendants, Plaintiff suffered fear, pain, anguish, and the following damages: a. shock, fright, anxiety, mental distress, annoyance, vexation, and humiliation suffered by plaintiff; b. loss of freedom; c. pain and suffering during the arrest and confinement; d. isolation from friends and family; e. loss of dignity; f. loss of reputation; g. Loss of enjoyment of life; h. Compensatory and punitive damages; and any and all other damages otherwise recoverable under USC Section 1983 and Section 1988; and punitive damages in the individual capacity of each Defendant.

172. Mr. Kennon' First and Fourth Amendment rights were callously violated by each defendant sued in their individual capacity.

173. Mr. Kennon' First and Fourth Amendment rights were maliciously violated by each defendant sued in their individual capacity.

174. Mr. Kennon' First and Fourth Amendment rights were wantonly violated by each defendant sued in their individual capacity.

175. Mr. Kennon' First and Fourth Amendment rights were oppressively violated by each defendant sued in their individual capacity.

176. The acts by the defendants in this Complaint were prompted or accompanied by ill will, or spite, or grudge, either toward Mr. Kennon individually, or toward persons in one of more groups or categories of which Mr. Kennon is a member.

177. The acts by the defendants in this Complaint were done in reckless or callous disregard, or indifference to, the rights of one of more persons, including Mr. Kennon.

178. The acts by the defendants in this Complaint were done in a way or manner which injures, or damages, or otherwise violates the rights of Mr. Kennon with unnecessary harshness or severity, as by misuse or abuse of authority or power, or by taking advantage of some weakness, or disability, or misfortune of Mr. Kennon.

WHEREFORE, the plaintiff Anthony Kennon respectfully requests that this Court enter judgment in his favor and against all Defendants for compensatory damages, as referenced above, punitive damages against the individual Defendants, for interest as allowed by law, for costs, expert witness fees, and reasonable attorney fees, as allowed by statute or as otherwise allowed by law, and for any other and further relief that this Court shall deem just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands a trial by Jury on all causes of action.

/s/Linus L. Baker
Linus L. Baker, KS 18197
6732 West 185th Terrace
Stilwell, KS  66085-8922
Telephone:  913.486.3913
Fax:          913.232.8734
E-Mail: linusbaker@prodigy.net
Attorney for the plaintiff

Verification of Complaint

I, Anthony Kennon, am the plaintiff in the above-captioned matter.  The photos depicted in this Amended Complaint are snapshots of AXON videos I obtained in discovery from the police department or from my own photos.  I have reviewed the foregoing allegations in this Verified Complaint, and I hereby declare under penalty of perjury that the foregoing allegations are true and correct to the best of my knowledge and understanding.

Date: 6-17-24

By: Anthony Kennon
Anthony Kennon

57