IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| Anthony Lee Kennon | | |
| | Plaintiff | Case No.  5:24-cv-04034-JWB-BGS |
| v. | | |
| | | PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS ECF 22 |
| Daniel Ashley et al | | |

**DEFENDANTS HAVE MORE THAN FAIR NOTICE OF THEIR INDIVIDUAL ACTIONS**

Defense counsel goes through the rote checkbox exercise in contending these defendant officers do not have fair notice because the plaintiff sometimes used the phrase "Defendant Officers" or "All Defendants." ECF 21, p.4.  These defendants ignore that the Amended Complaint goes into great factual detail, by word and photographic labeled snapshots of each of the individual defendant's AXON videos, as to the conduct of each defendant.[1]  The Amended Complaint is replete with identifying the personal acts of each defendant by name and by photographic identification.  The Amended Complaint provides fair notice to each individual defendant.  It was defendant Ashley who said "Anthony, you challenge my officer again you're going to jail man" – to which defendant Ashley reacted to Mr. Kennon saying "take me to jail" by arresting him: "all right" and "let's go. Put your hands behind your back."

---

[1] A simple word search of the Amended Complaint reveals that defendant Daniel Ashley was identified by name no less than 50 times, Doncouse 16 times, Spencer 15, and Smyser 29 times. Defendants do not claim the photographic evidence is so unclear as to prohibit each from being identified.

1

## COUNT 1
### RETALIATION AND RETALIATORY ARREST FOR EXERCISE OF PROTECTED SPEECH

Defense counsel's arguments more than dig several remarkable self-damning holes: *viz* that defendants did in fact retaliate against Mr. Kennon because of his protected speech. Each cited reason counsel claims an arrest was justified creates a graveyard of substantial factual admissions of retaliatory conduct. If the officer's videos actually supported the defendants' description of Mr. Kennon's purported crimes, the Court knows defendants would be the first ones to present that evidence to the Court. But defendants do not provide it. At the motion to dismiss stage, any "ambiguities in the video footage" favor the plaintiff. *Baker v. City of Madison,* 67 F.4th 1268, 1277-78 (11th Cir. 2023). The video snapshots supports the plaintiff's version of events and do not "blatantly" contradict them. *See Emmett v. Armstrong*, 973 F.3d 1127, 1131 (10th Cir. 2020). Rather than provide the Court with the four AXON videos, they urge the Court to take defense counsel's word for it as to her assertions of fact about what these individual defendants were motivated by and were thinking.[2] Defendants ignore the snapshots taken from their videos which contradict counsel's characterization of their actions.

---

[2] Defense counsel's statements about these individual defendants' motivations and state of mind are admissions, irrespective of whether any of the officers will later adopt any or all of her statements. These are "affirmative statements that a fact exists." *Wells Fargo Bank, N.A. v. Mesh Suture, Inc.,* 31 F.4th 1300, 1313 (10th Cir. 2022) ("statements in his pleadings were binding judicial admissions"). Those material allegations of fact are admitted "and only questions of law remain." 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1367 at 510 (2d ed. 1990).

The defendant officers brashly argue that they had authority to arrest Mr. Kennon for "challenging their authority." ECF 21 p.9 ("continuous challenges to their authority can reasonably be considered probable cause that Plaintiff committed the crime of disorderly conduct supporting his arrest"). Whatever that meant to defendant Ashley, it is not a crime under Kansas penal statutes. Telling a citizen not to "challenge" an officer is not a lawful order. *U.S. v. Mosely*, 743 F.3d 1317, 1330 (10th Cir. 2014). The "freedom of individuals verbally to oppose or challenge [official] action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state." *Houston v. Hill*, 482 U.S. 451, 462–63, (1987). The First Amendment protects "the freedom to express disagreement with state action, without fear of reprisal based on the expression ...." *McCurdy v. Montgomery Cnty.,* 240 F.3d 512, 520 (6th Cir. 2001).

Everything Mr. Kennon said was protected speech – which these defendants say were crimes. Mr. Kennon specifically asked permission to gather up his belongings. Mr. Kennon's back and forth gathering of his property from the trunk of the car to the sidewalk was allowed by the officers.³ The Amended Complaint states

---

³ *See* Amended Complaint ECF 6, ¶¶3-5:
> In that early morning, officers had been present over a domestic violence call involving Mr. Kennon and a woman named Destiny Kennon resided with. Officers found Mr. Kennon bruised and bloodied from the assault made upon him. Mr. Kennon decided he wanted to leave the premises and the Lawrence officers agreed to assist Mr. Kennon in taking his belongings. 4. The officers had been present at the residence for approximately an hour in which the scene was peaceful, and Mr. Kennon had been dialoging with the officers peacefully. 5.At around 2:30 a.m., Mr. Kennon was loading up his belongings into one of the police vehicles, but it was determined by an officer that there was not enough room in the vehicle – "I don't have room to move your whole

3

that "Mr. Kennon continued walking away. At one of the points when Mr. Kennon reached the car defendant Spencer whispered "watch out." On the last trip, Mr. Kennon said (from a distance while not even facing defendant Ashley) "take me to jail…take me to jail." ECF 6, ¶16. "Defendant Ashley then stated 'all right' and 'let's go. Put your hands behind your back.'" ¶17.

Mr. Kennon never argued with these defendants but even had he done so "merely arguing with police officers about the propriety of their conduct … falls within the speech exception to [the interference with public duties statute] and thus does not constitute probable cause to arrest someone for interference." *Gorsky v. Guajardo,* No. 20-20084, 2023 WL 3690429, at *8 n.16 (5th Cir. 2023); *Freeman v. Gore*, 483 F.3d 404, 414 (5th Cir. 2007) (noting that arguing with officers is not an offense under § 38.15, "yelling and screaming … alone does not take [an arrestee's] conduct out of the realm of speech," and finding a lack of probable cause where "there is nothing to indicate that [the arrestee's] conduct involved anything other than speech or that she physically obstructed the deputies in any way"). But Mr. Kennon was neither yelling nor screaming at all and was doing what he was given permission to do in transferring his property from the trunk of that vehicle.

---

life man." Mr. Kennedy told him "leave it right fucking here and give me my tools and I will get a ride." The officer replied "all right" and Mr. Kennon said "can I get my tools dog?" Mr. Kennon then took his property out of the vehicle and piled in on the sidewalk.

4

Whatever "challenge" meant to defendant Ashley, that "challenge" was speech – and clearly protected speech. One supposes "glaring" is speech. A citizen can verbally criticize an officer's actions or his authority without it being a crime as alleged by these defendants. Defendants double down on their view of the law by contending that Mr. Kennon's display of "hostility, profanities" was also a crime. ECF 21 p.9.[4] Whatever "hostility" means other than Mr. Kennon's "glaring" demeanor or his conversation with them, neither demeanor "hostility" nor "profanity" are crimes.

These defendant officers go on to contend that paragraph 14 of the Amended Complaint stating "Mr. Kennon did not say anything to any of those officers that was physically threatening to their safety. But Mr. Kennon did glare and look at the officers when he put his personal belongings in the stack. Mr. Kennon told the officer "nothin in this gonna hurt you is there" also constituted a crime. ECF 21 p.9 ("threat of what may be contained in his belongings"). "Glaring" is not a crime.  Telling an officer that there is nothing in Mr. Kennon's property that is dangerous is not a threat and not a crime. These defendants' creativity goes so far as to make Mr. Kennon's back and forth from the trunk of that car a crime – an "attempting to move away" crime. ECF 21 p.9.  Mr. Kennon was specifically given permission to remove his property from the trunk of the car.  Now these defendants create a crime by Mr. Kennon doing what they gave him permission to do in the first instance. At the time

---

[4] Speech characterized as profane as used by Mr. Kennon did not constitute fighting words. *See Wood v. Eubanks*, 25 F. 4th 414, 423-25 (6th Cir. 2022) (defendant calling police "fucking thugs," "motherfuckers," "bitch ass fucking pigs," "dirty rat bastards," and "pussies with badges" were not fighting words).

of the events in question, it was clearly established that a Lawrence City police officer may not use force on Mr. Kennon who is complying with a command. *See Newman v. Guedry*, 703 F.3d 757, 761-64 (5th Cir. 2012) (objectively unreasonable for officers to injure a man whose "behavior [does] not rise to the level of active resistance").

But these defendants are not through in jumping the shark in their creative work. They actually contend that it was a crime for Mr. Kennon to say "take me to jail." ECF 20 p.2. Defense counsel again avers it is a crime to "test the officers" by this protected speech and that Mr. Kennon "disobeyed Defendant Ashley's order by continuing to test the officers; challenging them to take him to jail." ECF 20 p.2. These views about what constitutes a crime are admissions of retaliatory conduct because of Mr. Kennon's protected speech. Mr. Kennon was arrested because he said "arrest me." ECF 6 ¶46; ¶111; ¶145; ¶152. Urging police to "take me to jail" is not a crime but absolute protected speech. Defendants cite name calling or cursing -- "coward-ass bitch" – and these are not fighting words and is again protected speech. None of the above constitutes the crime of disorderly conduct. ECF 6 ¶¶39-40; 43. Calling defendant Ashley a "stupid ass" and "you're a bitch," "cowering down to Destiny," that "she isn't going to fuck you ever, "that "you should have sent her bitch ass to jail," and "that's the coward shit that is life changing" is all protected speech and could never constitute any of the crimes defendants allege. ECF 6 ¶9. This is why the prosecuting attorney dismissed those charges. ECF 6 ¶¶84-87.

Defendants then make up from whole cloth other purported crimes – domestic battery, battery, and interference with a law enforcement officer. ECF 20 p.6.

6

Defendants assert after-the-fact that they had probable cause to arrest Mr. Kennon for domestic battery (ECF 20 p.6) because they were *dispatched* for a domestic violence call. Nothing in the Amended Complaint remotely provides probable cause to arrest Mr. Kennon for anything including battery. Saying "arrest me" does not interfere with any officer's duties that night. And calling an officer a "coward ass bitch" is no crime as alleged by these defendants. Defendants ignore what was actually said to Mr. Kennon as to justifying an arrest: "Mr. Kennon stated "I'm here dog – challenge your officers? What?" Defendant Ashley said "your language" – Mr. Kennon said "coward – you're a coward." Defendant Ashley said "your under arrest for disorderly conduct… for all the language you used against both these women…language you used towards us." ECF 6, ¶18.[5] The defendants in their reports admit that Mr. Kennon was arrested because of his protected speech (ECF 6 ¶¶41-43:

> 41 Defendant Doncouse omitted critical facts in his report and also made false statements that Mr. Kennon "was becoming aggressive toward Officer Smyser."
> 42 Defendant Ashley omitted critical facts and made false statements in his report claiming "Kennon threw these items at Officer Smyser's feet, leaned in closely toward Officer Smyser, and stared Officer Smyser down." He falsely claimed that Mr. Kennon "approached Lawrence Police Officer Smyser Anthony stared at Officer Smyser intently as he walked up, throwing the items on the ground at Officer Smyser's feet in a violent manner." He falsely claimed that Mr. Kennon "chested up" to Officer Smyser as though Mr. Kennon made physical contact or that he was inches away from Officer Smyser.

---

[5] Defendants attempt to analogize these facts to in *Mann v. Purcell,* 718 F.Supp. 868 (D.Kan.1989) in which that plaintiff "Mann voiced what reasonably could have been considered a threat to Officer Purcell, saying, Why don't you get out of my face." *Id.* at 876. And that plaintiff "attempted to move away from the officers" but this was only *after* he was arrested – hence a resisting arrest charge. Mr. Kennon was never accused of resisting arrest. Nothing in *Mann* is remotely similar to the statements made by Mr. Kennon.

7

43 Defendant Ashley does admit why he arrested Mr. Kennon – because Mr. Kennon called Officer Smyser names which were not fighting words – as defendant Ashley falsely claimed. Defendant Ashley admits he arrested Mr. Kennon for name calling and then words "directed to Destiny" and defendant Smyser in the parking lot – all of which was protected speech.

Now defense counsel makes up other reasons which is *post hac* reasoning.[6]

### COUNT 2: 42 U.S.C. §1983 FOURTH AMENDMENT VIOLATION – UNLAWFUL ARREST/FAILURE-TO-INTERVENE

Defendants again contend they can't discern who did what despite the explicit naming of each defendant and the visual depictions clearly identifying each. ECF 21 p.10 ("plaintiff did not plead facts about specifically how or when any particular Defendant failed to intervene in any action taken by another Defendant"). But this Amended Complaint repeatedly names and identifies the actions of each individual both in writing and visually. After repeatedly specifying the incorporated facts as to each defendant, the plaintiff concludes that "Defendants Doncouse, Spencer and Smyser failed to take reasonable steps to protect Mr. Kennon from defendant Ashley's unlawful arrest and unlawful use of excessive force." ECF 6 ¶109. A cause of action for failure to intervene is factually stated. Law enforcement officials "have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994). *See Yang v. Hardin*, 37 F.3d 282, 285 (7th

---

[6] Government justifications for interfering with First Amendment rights must be genuine, not hypothesized or invented *post hoc* in response to litigation." *Kennedy v. Bremerton Sch. Dist.,* 597 U.S. 507, 543 n.8 (2022). Justification for such interference must also be communicated to the affected person. *See id.* ("But [defendant] never raised concerns along these lines in its contemporaneous correspondence with [plaintiff]").

Cir. 1994) ("officer who is present but fails to intervene to prevent another law enforcement official from infringing a person's constitutional rights is liable if the officer had reason to know … that any constitutional violation has been committed by a law enforcement official and the officer had a realistic opportunity to intervene to prevent the harm from occurring").  As demonstrated above, there was a Constitutional violation which these defendants failed to intervene.  Defendants argue that they cannot commit a failure to intervene when they are participants in the Constitutional violations of arrest and excessive force but cite no legal authority for that wrong proposition.

### COUNT 3 EXCESSIVE FORCE

Defendants ignore the allegations any force that was used by these deputies was a violation of the Fourth Amendment.  Defendants contend they needed to WRAP Mr. Kennon to "effectuate the arrest or detention." ECF 21, p.13. But Mr. Kennon was already in handcuffs sitting in the back of the police vehicle. "Mr. Kennon yelled briefly from the back seat being handcuffed behind his back and the seat belted in but then stopped. Defendant Ashley immediately made a decision to retaliate again against Mr. Kennon by telling the officers to remove Mr. Kennon from the vehicle (even though Mr. Kennon was still and calm)." ECF 6 ¶¶21-22.

Defendants essentially argue that if they characterize their actions as "wrapping" or applying pressure point maneuvers that this is self-proving and that there can never be excessive force. Defendants are wrong.  Defendants are kind to themselves in characterizing their force and infliction of pain upon Mr. Kennon when

9

defendant Ashley ordered the "WRAP" as "*de minimis* applications of force." ECF 21, p.14. "Ashley orders a WRAP restraint in order to torment and punish Mr. Kennon." ECF 6, ¶23. "Defendants further retaliated against Mr. Kennon by putting him into a WRAP restraint where they could inflict further pain and torment upon Mr. Kennon. They justified this as purportedly keeping Mr. Kennon safe which was false and a pretextual community-caretaking rationale." ¶45. "When Mr. Kennon was put into a WRAP restraint, he was handcuffed, had an ankle strap that strapped his ankles together, a leg restraint, and was being placed in a chest restraint and subsequently in a helmet." ¶69. "None of the officers' reports reflect that any use of force was utilized in placing Mr. Kennon in the WRAP restraint system." ¶78. "No defendant explained to Mr. Kennon exactly what he expected prior to the use of the WRAP procedure – there was no warning to Mr. Kennon as to the continuation of any behavior would warrant an escalation to the WRAP. Rather, defendant Ashley, unknown to Mr. Kennon, orders WRAP without any attempt to communicate clear lawful orders or information to this plaintiff. This was all done in the context of 'officer rage.'" ¶¶159-160. The plaintiff's allegations dispute that contention (ECF 6 ¶¶121-130:

> There was no physical aggression or resistance shown by Mr. Kennon prior to the use of force.
> Defendants placing Mr. Kennon in unnatural positions without verbal commands itself caused Mr. Kennon pain in which he was unsure and unable to accomplish those physical feats.
> Sticking their fingers into Mr. Kennon's throat or through his helmet, and then shaking his head, was excessive force.
> Because Mr. Kennon had not been instructed or knew what was expected, he was punished by defendant Ashley repeatedly using his cruel and malicious mandibular angle gripping and poking similar to electrified cattle prods.

10

> As such, the use of force by the defendants Ashley, Doncouse, Spencer and Smyser was unjustified, and demonstrated deliberate indifference to his constitutional civil rights.
> Further, after the unwarranted aggressive grabbing of Mr. Kennon's arms, pain pressure maneuvers, they each restrained Mr. Kennon to the ground and restricted his movement.
> Prior to the excessive use of force, the plaintiff Kennon posed no risk of harm to Defendants Doncouse, Spencer, Smyser, or Ashley.
> The use of force upon the plaintiff Kennon was unjustified, constituted an unreasonable and excessive use of force, and demonstrated deliberate indifference to his constitutional civil rights.
> There was gratuitous use of force by defendants Ashley, Doncouse, Spencer and Smyser because Mr. Kennon was compliant when he was told he was under arrest and did not resist the arrest, was compliant coming out of the vehicle and during the WRAP strait jacket technique.
> When Mr. Kennon was booked into jail, he remained in handcuffs for five hours.

Defendants go on to make up facts asserting that they "left no substantial injury" when the Amended Complaint averred in writing and in visual depictions Mr. Kennon's physical injuries. Defendants ignore the retaliation allegations in how the individual officers were deliberately inflicting unnecessary pain sometimes using "pressure points." Excessive force claims are plausibly pled.

### COUNT 4 MALICIOUS PROSECUTION

Defendants do not dispute that the criminal prosecution ended without a conviction. Defendants again argue they don't know what they did in causing the prosecution of Mr. Kennon but only do so by ignoring the well pled and specific allegations. ECF 21, p.15.

Giving credit where credit is due, the Amended Complaint plainly begins with defendant Ashley as the one who set in motion the series of events. Once defendant Ashley arrived on the scene and perceived that Mr. Kennon was not giving him due homage, defendant Ashley proceeded to retaliate against Mr. Kennon repeatedly. *See*

11

*Poolaw v. Marcantel,* 565 F.3d 721, 732-33 (10th Cir. 2009) ("set in motion a series of events" that the defendant should know would cause others to deprive someone of a constitutional right"). Defendants contend they cannot be held liable for malicious prosecution because of the prosecutor's decision. ECF 21 p.16. They claim that there were no facts to show that they "influenced the prosecutor to bring criminal charges against him." *Id.* Defendants ignore that each defendant filed reports – with false misleading information – which the Amended Complaint specifically names each one and how the reports were false. ECF 6 ¶¶11, 39, 41, 42, 43, 44, and 45. The probable-cause requirement presumes a truthful showing. *Harte v. Bd. of Commissioners of Cnty. of Johnson, Kan.,* 864 F.3d 1154, 1162 (10th Cir. 2017). Where false statements are included either knowingly or with reckless disregard for the truth, and it undermines the existence of probable cause. *Id.*; *Taylor v. Meacham,* 82 F.3d 1556, 1562 (10th Cir. 1996).

A defendant does not actually have to be the one who initiates the prosecution to satisfy causation; "one who prevaricates and distorts evidence to convince the prosecuting authorities to press charges can be said to cause the prosecution." *Bledsoe v. Jefferson Cnty., Kan.,* 275 F. Supp. 3d 1240, 1255 (D. Kan. 2017). All of the defendants' actions for both arrests were "an inseparable basis for the charges against" Mr. Kennon. *See Pierce v. Gilchrist,* 359 F.3d 1279, 1291–92 (10th Cir. 2004) (agreeing with the district court that "if Defendant was instrumental in Plaintiff's continued confinement or prosecution, she cannot escape liability"); *Bledsoe v. Carreno,* 53 F.4th 589, 614 (10th Cir. 2022).

**NO QUALIFIED IMMUNITY**

The defendants cite a blanket of generally immunity law but actually do not factually argue how any of it applies to the facts of this case. ECF 21 pp.16-17. Defendants assert that mere recitation of the phrase "qualified immunity" immediately transfers a burden to the plaintiff to disprove it. Defendants are wrong.

There are four videos of the event. *See Myers v. Brewer,* 773 Fed. Appx. 1032, 1035 n.2 (10th Cir. 2019) (police bodycam in considering qualified immunity). At the motion to dismiss stage, a defendant has the burden of pleading and proving qualified immunity. *See Harlow v. Fitzgerald*, 457 U.S. 800, 815 (1982). Asserting a qualified immunity defense at this stage subjects the defendants to a more challenging standard of review than would apply on summary judgment. *See Hemry v. Ross*, 62 F.4th 1248, 1253 (10th Cir.2023). This is because at the motion to dismiss stage, it is the defendant's conduct *as alleged in the complaint* that is scrutinized for objective legal reasonableness. *Id.* Just the recitation of facts made in this response indicates that the defendants qualified immunity claims fail.

"Qualified immunity is not a talismanic phrase that relieves Defendants of their burden to show that their actions did not violate Plaintiff's clearly established constitutional rights." *Miller v. Goggin*, No. CV 22-3329-KSM, 2023 WL 3294832, at *4 (E.D. Pa. May 5, 2023). Defendants fail "to grapple with the facts and claims alleged in Plaintiff's Complaint." *Id.* Defendants did not "highlight particular claims against them and analyze the pleadings nor do they conduct any of the other analysis necessary to establish qualified immunity." *Id.*

"The more obviously egregious the conduct in light of prevailing constitutional principles, the less specificity is required from prior case law to clearly establish the violation." *Pierce* at 1298; see also *Frasier v. Evans*, 992 F.3d 1003, 1015 (10th Cir. 2021) ("In this regard, the Supreme Court has reminded us recently that under certain 'extreme circumstances' general constitutional principles established in the caselaw may give reasonable government officials fair warning that their conduct is constitutionally or statutorily unlawful").

As pled, Mr. Kennon was arrested because he "glared" at defendant Ashley and said "take me to jail." which Ashley perceived as committing the imaginary crime of "challenging his authority." Ashley was insulted, arrested Mr. Kennon, and then proceeded to put Mr. Kennon in a WRAP and taken to jail where he remained handcuffed for five hours. The WRAP was retaliatory and inflicted unnecessary force and pain upon Mr. Kennon while he had been completely compliant and calm with his hands handcuffed behind his back. Arriving at a domestic violence call does not provide probable cause to arrest Mr. Kennon. Using profanity is not a crime.

Those laws are clearly established and also meets the egregiousness standard. See *Mink v. Knox*, 613 F.3d 995, 1003-04 (10th Cir. 2010) ("It goes without saying that a government official may not base her probable cause determination on an unjustifiable standard, such as speech protected by the First Amendment."); *Worrell v. Henry*, 219 F.3d 1197, 1212 (10th Cir. 2000) ("We have stated that any form of official retaliation for exercising one's freedom of speech, including prosecution, threatened prosecution, bad faith investigation, and legal harassment, constitutes an

infringement of that freedom"); *See Turner v. Lotspeich,* 1996 WL 23195, at *2 (10th Cir. 1996) ("law is clearly established that an officer would violate a plaintiff's Fourth and Fourteenth Amendment rights by knowingly or recklessly making a false statement in an affidavit in support of an arrest or search warrant, if the false statement were material to the finding of probable cause"). It is clearly established that "using force on a suspect who was handcuffed, zip-tied, and had ceased resisting was excessive force" contrary to clearly established law. *Wilkins v. City of Tulsa,* 33 F.4th 1265, 1277 (10th Cir.2022). It is clearly established law that speech that does not constitute fighting words is protected and not a crime. *See* citations of law above. The law of retaliatory arrest was clearly established prior to Mr. Kennon's arrest. *See Douglass v. Garden City Cmty. Coll.,* 652 F. Supp. 3d 1329, 1345 (D. Kan. 2023). In *Douglass*, Judge Vratil held that the "defendants' focus, however, is too narrow. In the Tenth Circuit, the law has been clearly established since at least 2000 that Section 1983 prohibits retaliation for exercising constitutionally protected rights under the First Amendment." (citing *Nave v. Indep. Sch. Dist. No. 20 of LeFlore Cty.,* No. CIV-17-096-KEW, 2018 WL 6419296, at *9 (E.D. Okla. Dec. 6, 2018)). Judge Vratil held a "reasonably competent public official would necessarily know that such retaliatory behavior violated plaintiff's First Amendment rights." As the Supreme Court has explained, "the law is settled that as a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions … for speaking out." *Hartman v. Moore,* 547 U.S. 250, 256 (2006). "The freedom of individuals verbally to oppose or challenge police action without

15

thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state." *City of Houston v. Hill*, 482 U.S. 451, 462-63 (1987). The Supreme Court held that an individual has the right to be free from a retaliatory arrest, even if supported by probable cause, when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been arrested. *Nieves at* 1727.  At the time Mr. Kennon was arrested, this constitutional right was clearly established. "Qualified immunity does not protect an officer where the constitutional violation was so obvious under general well-established constitutional principles that any reasonable officer would have known the conduct was unconstitutional." *Rosales v. Bradshaw*, 72 F.4th 1145, 1157 (10th Cir. 2023). *See Buck v. City of Albuquerque*, No. 1:04-cv-01000-WJ-DJS, 2007 WL 9734037, at *42 (D.N.M. Apr. 11, 2007) ("reasonable officer would have understood that using force against law-abiding demonstrators for the purpose of interfering with their First Amendment rights was contrary to the established law"); *Irizarry v. City & Cnty. of Denver*, 661 F. Supp. 3d 1073, 1091 (D. Colo. 2023) ("The law was also clearly established in June 2019 that the First Amendment prohibits government officials from subjecting an individual to retaliatory actions for engaging in protected speech") (quoting *Nieves*). The law is clearly established that the officers cannot file false reports.  Defendants have not shown that any defendant is entitled to qualified immunity on the face of the Amended Complaint.

16

These defendants' motion to dismiss (ECF 22) should be denied.

<u>/s/Linus L. Baker</u>  
Linus L. Baker, KS 18197  
6732 West 185th Terrace  
Stilwell, KS 66085-8922  
Telephone: 913.486.3913  
Fax: 913.232.8734  
E-Mail: linusbaker@prodigy.net  
Attorney for the plaintiff

Certificate of Service

The above was provided notice to all parties entitled to such notice pursuant to the Court's electronic filing system.

<u>/s/Linus L. Baker</u>  
Attorney for the plaintiff