IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| Anthony Lee Kennon<br><br>                           Plaintiff<br>v.<br><br>Daniel Ashley et al | Case No. 5:24-cv-04034-JWB-BGS<br><br>MOTION AND MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO RECONSIDER |

### INTRODUCTION

On March 31, 2025, this Court granted Defendant Officers' motion to dismiss Plaintiff's claims for First Amendment retaliation, unlawful arrest, and malicious prosecution, finding that Defendant Officers had probable cause to arrest Plaintiff for disorderly conduct based on "the totality of the circumstances," including "both physical acts and speech." (ECF. 34 at 7.) The Court found that Plaintiff "engaged in aggressive conduct and name calling," placed tools near officers' feet, "glared" at officers, and "taunted" them. (Id. at 2-3.) Subsequently, in October 2025, Plaintiff deposed Defendant Officers Daniel Ashley and Austin Spencer. The AXON video and this testimony reveals that the factual findings underlying the Court's probable cause determination were fundamentally incorrect. Most significantly:

- Defendant Ashley admitted the arrest was based solely on "language," not physical conduct, and that Plaintiff made "no threatening gestures or movements." (Ashley Dep. 33:7-11.)

- Ashley testified he did not determine probable cause existed until four months after the arrest, when he reviewed video footage. (Ashley Dep. 151:4-13.)

1

- Ashley admitted he witnessed what he considered three separate crimes but arrested Plaintiff for none of them, instead arresting him only after Plaintiff said "arrest me" following a warning. (Ashley Dep. 45:1-9; 53:7-25; 116:12-17).

- Both Ashley and Spencer confirmed Plaintiff made no threatening gestures, never "chested up" to anyone in a manner constituting disorderly conduct, and that no one was actually alarmed by his conduct. (Ashley Dep. 107:13-15, 108:2-6, 162:9-16; Spencer Dep. 80:4-6, 81:1-3).

Plaintiff has attached depositions of officer Spencer and Sgt Ashley. A motion to file their respective AXON videos conventionally will be made corresponding to this motion. This newly discovered evidence establishes that the Court's factual findings—which were essential to its probable cause determination—were based on a material misapprehension of the facts. Reconsideration is warranted.

## STANDARD

Rule 60(b)(1) permits relief from a judgment based on "mistake, inadvertence, surprise, or excusable neglect." Additionally, newly discovered evidence that could not have been discovered with reasonable diligence before the original ruling may warrant reconsideration under Rule 60(b)(2). *See Yapp v. Excel Corp.,* 186 F.3d 1222, 1231 (10th Cir. 1999). The scheduling order was entered May 29, 2025. ECF 39 The depositions at issue were taken after the Court's March 31, 2025 dismissal order and could not have been presented earlier.

## BACKGROUND

In its March 31, 2025 Memorandum and Order, the Court dismissed Plaintiff's First Amendment retaliation, unlawful arrest, and malicious prosecution claims, finding that "Defendant Officers had probable cause to arrest Plaintiff for the crime of disorderly conduct." (ECF 34 at 8.) The Court's probable cause finding rested on several key factual determinations:

1. That Plaintiff's "arrest was based on both physical acts and speech." (*Id.* at 7.)

2. That Plaintiff "engaged in aggressive conduct and name calling." (*Id.* at 3.)

3. That Plaintiff "allegedly glared at all four Defendant Officers," "attempted to chest bump Officer Spencer," threw or placed tools "near Officer Spencer's feet," and "called Officer Ashley a bitch and coward." (*Id.* at 7.)

4. That Plaintiff "taunted Officer Ashley by exclaiming 'Take me to jail'" after being warned. (*Id.*)

5. That "the totality of the circumstances" demonstrated Plaintiff "engaged in noisy conduct when he threw or placed his tools on the ground," "attempted to chest bump Officer Spencer and glared at him," and "engaged in language that would arouse anger." (*Id.*)

The Court concluded: "Based on the totality of the circumstances that lead to his arrest, the court concludes that Defendant Officers had probable cause to arrest him for disorderly conduct." (*Id.* at 8.)

### NEWLY DISCOVERED EVIDENCE

Following the Court's dismissal order, Plaintiff deposed Defendant Ashley on October 20, 2025, and Officer Spencer on September 30, 2025. The sworn testimony

3

from these depositions—which constitute newly discovered evidence unavailable at the time of the Court's ruling—directly contradicts the factual findings on which the Court relied.

## ARGUMENT

**THE COURT MISAPPREHENDED MATERIAL FACTS REGARDING THE BASIS FOR PLAINTIFF'S ARREST**

The Court's central finding—that probable cause existed based on "both physical acts and speech"—is directly contradicted by Defendant Ashley's own testimony.

**ASHLEY ADMITTED THE ARREST WAS BASED SOLELY ON SPEECH, NOT PHYSICAL CONDUCT**

When asked what he told Plaintiff about why he was being arrested, Ashley testified:

Q. "What did you tell Mr. Kennon he was under arrest for?"
A. "I told him, 'You're under arrest for disorderly conduct for all the language you're using toward both of these women.'"
Q. "So the basis for the arrest was what he said, not what he did?"
A. "Yes, the things he said to those women."
Q. "Did he make any threatening gestures or movements?"
A. "No. It was the language."(Ashley Dep. 33:2-11.)

This testimony directly refutes the Court's finding that the arrest was based on "both physical acts and speech." Ashley explicitly confirmed that physical conduct was not the basis for the arrest—"It was the language."

**Ashley Admitted Plaintiff Made No Threatening Physical Gestures**

The Court found that Plaintiff engaged in "aggressive conduct" including attempting to "chest bump Officer Spencer," glaring at officers, and throwing tools near officers' feet. (ECF 34 at 3, 7.) Ashley's testimony contradicts these findings:

Q. "At any time did Mr. Kennon ever raise his hands, clench his fists, or take any other action that you would interpret as a threatening gesture?"

4

A. "No, not that I recall."
Q. "When you say he 'chested up,' did he ever touch Officer Smyser or move toward him in a striking motion?"
A. "No. There was no contact."
Q. "Did he make any threats to harm you or any of the officers?"
A. "No direct threats. He was loud, but not threatening."
Q. "Chesting up to someone alone is not disorderly conduct?"
A. "Chesting up to someone alone is not disorderly conduct."
(Ashley Dep. 107:13-15, 108:2-6, 109:1-4.)

Moreover, Ashley admitted that "chesting up" is merely a "colloquialism to describe an aggressive, dominating posture" and is "all pretty much subjective." (Ashley Dep. 100:23-102:7.) This subjective characterization cannot support a finding of probable cause for conduct that Ashley himself admits does not constitute disorderly conduct.

Spencer similarly testified that Plaintiff exhibited no threatening behavior:

Q. "After watching your body camera footage, did you see anything in it that you would now describe as threatening behavior by Mr. Kennon?"
A. "No. I didn't."
Q. "Did the video refresh your recollection as to whether Mr. Kennon ever raised his hands, clenched his fists, or moved toward anyone in a threatening way?"
A. "No. He didn't do that."
(Spencer Dep. 80:4-6, 81:1-3.)

**The Court Misapprehended When and How Probable Cause Was Determined**

The Court's probable cause analysis assumes that Defendant Officers determined probable cause existed at the time of arrest based on conduct they observed. The depositions reveal this assumption was fundamentally incorrect.

**Ashley Did Not Determine Probable Cause Existed Until Four Months After the Arrest**

Ashley testified that he did not conclude Plaintiff had committed disorderly conduct until months after the arrest:

5

Q. "When did you decide that Mr. Kennon had committed the crime of disorderly conduct?"
A. "After reviewing the video footage, I realized his behavior met the elements."
Q. "So you didn't make that determination at the scene?"

A. "No. I concluded that after watching the footage."
(Ashley Dep. 151:4-9.)

Ashley did not write his supplemental narrative documenting this conclusion until September 2022—four months after the May 1, 2022 incident—and only after being subpoenaed for Kennon's criminal trial and learning he might be sued. (Ashley Dep. 91:7-16.)

This testimony establishes that probable cause did not exist at the time of arrest. An officer cannot arrest someone based on probable cause determined four months later after reviewing video footage.

**The Alleged "Crimes" Ashley Identified Occurred Before He Arrived**

The Court found that Defendant Officers arrested Plaintiff based on conduct they witnessed. But Ashley testified he did not witness any crime when he first arrived:

Q. "When you first arrived you didn't witness Mr. Kennon committing any crime, did you?"
A. "No." (Ashley Dep. 44:8-10.)

Ashley further testified that the first "crime" he believed occurred was when Plaintiff yelled from the parking lot to Destiny, who was in a second-floor apartment: "Bitch, if you don't open this trunk I'm pressing charges on you." (Ashley Dep. 52:4-8.) This occurred at a point in time when other officers had already been on scene for 45 minutes. (Ashley Dep. 10:6-13.) Ashley testified he then witnessed what he considered two additional crimes but arrested Plaintiff for none of them:

6

Q. "So he's committed three acts of disorderly conduct...Correct?"
A. "Correct."
Q. "And yet you didn't arrest him at that moment, did you, for any of those three acts?"
A. "Correct." (Ashley Dep. 53:19-25, 54:17-19.)

The fact that Ashley witnessed what he considered three separate crimes yet arrested Plaintiff for none of them undermines any claim that probable cause required immediate arrest. Instead, Ashley arrested Plaintiff only after Plaintiff complied with Ashley's warning and then said "arrest me."

**THE COURT MISAPPREHENDED THE CIRCUMSTANCES LEADING TO THE ARREST**

The Court found that Plaintiff "taunted Officer Ashley by exclaiming 'Take me to jail'" after being warned, suggesting continued defiance. (Doc. 34 at 7.) The depositions reveal the opposite: Plaintiff complied with the warning, yet was arrested anyway.

**1. PLAINTIFF COMPLIED WITH ASHLEY'S WARNING**

Ashley testified that after warning Plaintiff not to "challenge" his officers, Plaintiff complied:

Q. "When you told him, 'If you challenge my officers again, you're going to jail,' did he challenge anyone after that?"
A. "No."
Q. "So why did you arrest him?"
A. "He said, 'Take me to jail.' I said, 'Okay.'"
(Ashley Dep. 116:12-17.)
Spencer confirmed this:
Q. "Yeah, I don't recall him challenging after that, no."
Q. "Well, he didn't challenge an officer when he said, 'Arrest me,' did he?"
A. "Correct."

7

(Spencer Dep. 81:9-10, 82:12-14.)

The statement "arrest me" or "take me to jail" does not constitute disorderly conduct or provide probable cause. Ashley admitted this:

Q. "Saying arrest me...doesn't have anything to do with probable cause to arrest, does it?"
A. "No."
Q. "You agree with me. Correct?"
A. "I agree with you." (Ashley Dep. 116:2-9.)

Spencer testified he had never seen anyone arrested simply for saying "arrest me." (Spencer Dep. 83:10-12.)

**2. ASHLEY ARRESTED PLAINTIFF BASED ON A "CONSENT" THEORY HE KNEW WAS INVALID**

Ashley testified he interpreted Plaintiff's statement "take me to jail" as consent to be arrested:

Q. "So when Mr. Kennon said, 'Take me to jail,' you interpreted that as him consenting to be arrested?"
A. "Yes. That's how I understood it."
Q. "You understand that consent is not an element of probable cause, correct?"
A. "Yes." (Ashley Dep. 116:18-19, 117:3-4.)

This "consent" theory confirms the absence of probable cause. If Ashley believed consent was necessary to arrest Plaintiff, then by definition he did not believe probable cause existed based on Plaintiff's conduct.

**3. PLAINTIFF HAD NO NOTICE HE HAD COMMITTED ANY CRIME**

The Court's analysis assumes Plaintiff was on notice that his conduct constituted criminal behavior. Ashley testified the opposite:

Q. "He was not on any notice that he had committed one, two, three...crimes...Right?"

8

A. "Correct." (Ashley Dep. 115:4-11.)

An individual cannot be held to have engaged in conduct warranting arrest when the arresting officer himself never informed the person that he believed any crime had occurred.

**D. THE COURT MISAPPREHENDED FACTS REGARDING WHETHER ANYONE WAS "ALARMED"**

A critical element of Kansas disorderly conduct is that the conduct must "alarm, anger or disturb others." K.S.A. § 21-6203. The Court found this element satisfied. But the depositions establish no one was actually alarmed.

**1. Ashley Could Only Speculate About Who Was Alarmed**

Q. "Who specifically was alarmed by Mr. Kennon's statements?"

A. "Well, Destiny might have been. And maybe one of the officers — Smyser, I think — but I don't recall for sure."

Q. "Did Destiny ever tell you she was alarmed or afraid?"

A. "I don't remember her saying that. I'm just basing that on her reaction."

Q. "So you're guessing that meant she was alarmed?"

A. "Yeah. I don't know for sure. I didn't ask."

Q. "Did you document anywhere that Destiny or Smyser were alarmed?"

A. "No." (Ashley Dep. 161:22-162:16.)

**2. SPENCER TESTIFIED HE WOULD HAVE NOTED IF ANYONE WAS ALARMED—AND HE DIDN'T**

Q. "If you had seen any neighbor, bystander, or the woman, Destiny, appear alarmed or call for help, you would have noted that in your report?"

A. "Yes."

Q. "But you didn't note that she [Destiny] was alarmed, angry or disturbed by it, did you?"

A. "I don't think I noted -- I don't think I used those words for anyone." (Spencer Dep. 56:19-23, 64:6-10.)

9

Spencer further testified that he would have documented if he witnessed a crime or probable cause—and he did not. (Spencer Dep. 83:1-2.) His report does not state that probable cause existed before Ashley arrived. (Spencer Dep. 67:21-25.)

### E. The Court Misapprehended the Condition of the Scene When Ashley Arrived

The Court's analysis suggests an ongoing, escalating situation requiring Ashley's intervention. The depositions establish the opposite: the scene was under control, the investigation was complete, and no emergency existed.

Spencer testified:

Q. "Before -- or at the time Sergeant Ashley arrived, did you believe the scene was under control?"
A. "Yes."
Q. "Had you completed your investigation before Sergeant Ashley got there?"
A. "Yes." (Spencer Dep. 90:19-25.)

Ashley admitted that when he arrived, no officer appeared in distress, the scene was under control, and there was no emergency. (Ashley Dep. 44:8-17.) Moreover, no one called for Ashley's assistance—he responded on his own initiative after noticing officers had been on scene for 45 minutes. (Ashley Dep. 10:6-13, 38:20-21.)

### F. ADDITIONAL EVIDENCE ESTABLISHES PLAINTIFF'S SPEECH WAS PROTECTED

The depositions reveal additional facts supporting Plaintiff's First Amendment retaliation claim that were not apparent from the complaint.

#### 1. THE FIRST "CRIME" INVOLVED PROTECTED SPEECH ABOUT LEGAL PROCESS

Ashley identified Plaintiff's first alleged crime as saying to Destiny: "Bitch, if you don't open this trunk I'm pressing charges on you." (Ashley Dep. 52:4-8.) The

10

statement "I'm pressing charges" refers to invoking legal process—core protected First Amendment activity that cannot form the basis for criminal liability.

When asked if these were "fighting words," Ashley admitted: "The language itself? ...Not in itself." (Ashley Dep. 27:20-28:1.) Ashley acknowledged it depends on "the manner in which they're presented." (Ashley Dep. 28:4-6.) But manner alone cannot convert protected speech into unprotected fighting words.

**2. PLAINTIFF'S SPEECH WAS DIRECTED ACROSS DISTANCE**

The alleged speech occurred while Plaintiff was in a parking lot and Destiny was in a second-floor apartment. (Ashley Dep. 52:4-8.) Speech across such distance is unlikely to constitute fighting words likely to provoke immediate violence.

**3. SELECTIVE ENFORCEMENT DEMONSTRATES PRETEXTUAL ARREST**

Ashley's admission that he witnessed three acts he considered criminal yet arrested Plaintiff for none of them demonstrates the arrest was pretextual. He testified he was "being patient" with Plaintiff despite these alleged crimes. (Ashley Dep. 54:14-19.) But Ashley arrested Plaintiff immediately after Plaintiff said "arrest me"—conduct Ashley admits has nothing to do with probable cause.

This selective enforcement demonstrates that Ashley's true motivation was retaliation for Plaintiff's speech, not a good-faith belief that Plaintiff's conduct warranted arrest.

**THE COURT SHOULD RECONSIDER DISMISSAL OF ALL THREE CLAIMS**

**A. FIRST AMENDMENT RETALIATION CLAIM**

11

The Court dismissed Plaintiff's First Amendment retaliation claim because it found probable cause existed, which meant "Defendant Officers' decision to arrest Plaintiff was not substantially motivated to chill his First Amendment right to freedom of speech." (Doc. 34 at 8.)

The newly discovered evidence establishes:

1. The arrest was admittedly based solely on speech, not conduct. (Ashley Dep. 33:7-11.)

2. Plaintiff complied with Ashley's warning, yet Ashley arrested him immediately after he said "arrest me"—speech Ashley admits provides no probable cause. (Ashley Dep. 116:12-17, 116:2-9.)

3. Ashley witnessed what he considered three crimes but did not arrest Plaintiff for any of them, instead arresting him only after the "arrest me" statement. (Ashley Dep. 53:19-25, 116:12-17.)

4. Ashley did not determine probable cause existed until four months later. (Ashley Dep. 151:4-9.)

These facts establish a genuine dispute whether Ashley's decision to arrest was substantially motivated by Plaintiff's speech. At minimum, they establish that the Court's factual findings—that the arrest was based on conduct, not speech, and that Plaintiff continued to taunt officers after being warned—were incorrect.

**B. UNLAWFUL ARREST AND FAILURE TO INTERVENE CLAIMS**

The Court dismissed the unlawful arrest claim because "Plaintiff was lawfully arrested for disorderly conduct." (Doc. 34 at 8.) The depositions establish:

12

1. Probable cause did not exist at the time of arrest—Ashley admits he did not determine probable cause existed until reviewing video footage four months later. (Ashley Dep. 151:4-9.)

2. The arrest was based solely on speech, with no threatening gestures or conduct. (Ashley Dep. 33:7-11, 107:13-15, 108:2-6.)

3. No one was actually alarmed—a required element of disorderly conduct. (Ashley Dep. 162:9-16; Spencer Dep. 56:19-23, 64:6-10.)

4. Plaintiff complied with Ashley's warning, and the statement "arrest me" does not constitute probable cause. (Ashley Dep. 116:2-17.)

5. The scene was under control, the investigation was complete, and no probable cause existed before Ashley arrived. (Spencer Dep. 90:19-25, 67:21-25.)

These facts establish that probable cause did not exist and warrant reconsideration of the unlawful arrest claim.

**C. Malicious Prosecution Claim**

The Court dismissed the malicious prosecution claim on two grounds: (1) probable cause existed, and (2) the prosecutor's independent decision to charge broke the chain of causation. (ECF 34 at 9-10.)

As to the first ground, the depositions establish probable cause did not exist for the reasons stated above.

As to causation, the Court found Plaintiff's "assertions about the Officer Defendants falsifying their incident reports are conclusory" because "his own

13

allegations indicate he engaged in disorderly conduct prior to his arrest." (ECF 34 at 10.) But the depositions reveal:

1. Ashley admitted the physical conduct described in the reports did not form the basis for arrest—only speech did. (Ashley Dep. 33:7-11.)

2. Both Ashley and Spencer confirmed no threatening behavior occurred. (Ashley Dep. 107:13-15, 108:2-6; Spencer Dep. 80:4-6, 81:1-3.)

3. Ashley did not write his supplemental narrative until four months after the incident, after being subpoenaed and learning of potential litigation. (Ashley Dep. 91:7-16.)

4. Spencer did not know why Plaintiff was arrested and would have documented if he witnessed probable cause. (Spencer Dep. 82:15-20, 83:1-2.)

These facts support Plaintiff's claim that false statements in the police reports caused his prosecution and warrant reconsideration of the malicious prosecution claim.

## CONCLUSION

The attached videos speak for themselves. The depositions of Defendant Officers Ashley and Spencer constitute newly discovered evidence that directly contradicts the factual findings upon which this Court relied in determining that probable cause existed to arrest Plaintiff. This evidence establishes:

• The arrest was based solely on speech, not physical conduct;

• No threatening behavior occurred;

• Plaintiff complied with warnings before arrest;

• No one was actually alarmed;

• Probable cause was not determined until four months after arrest;

• The scene was under control before Ashley arrived; and

• The statement "arrest me" does not provide probable cause.

These facts demonstrate manifest error in the Court's factual findings and establish genuine disputes of material fact regarding whether probable cause existed and whether the arrest was substantially motivated by retaliation for Plaintiff's speech.

Reconsideration is warranted to correct clear error and prevent manifest injustice.

WHEREFORE, Plaintiff respectfully requests that this Court:

A. Reconsider its March 31, 2025 Memorandum and Order (ECF. 34);

B. Vacate the dismissal of Plaintiff's claims for First Amendment retaliation, unlawful arrest and failure to intervene, and malicious prosecution against Defendant Officers in their individual capacities;

C. Grant Plaintiff leave to conduct further discovery on these claims; and

D. Grant such other and further relief as the Court deems just and proper.

| | |
|---|---|
| /s/Linus L. Baker<br>Linus L. Baker, KS 18197<br>6732 West 185th Terrace<br>Stilwell, KS  66085-8922<br>Telephone:  913.486.3913<br>Fax:            913.232.8734<br>E-Mail: linusbaker@prodigy.net<br>Attorney for the plaintiff | Certificate of Service<br>The above was provided notice to all parties entitled to such notice pursuant to the Court's electronic filing system.<br><br>/s/Linus L. Baker<br>Attorney for the plaintiff |

15