**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| ANTHONY KENNON,<br><br>Plaintiff,<br><br>v.<br><br>DANIEL ASHLEY, et al.,<br><br>Defendants. | Case No. 24-4034-JWB-BGS |

# PRETRIAL ORDER

On August 18, 2026, U.S. Magistrate Judge Brooks G. Severson conducted a pretrial conference in this case by phone. Plaintiff Anthony Lee Kennon appeared through counsel Linus Baker. Defendants Daniel Ashley, Joshua Doncouse, Austin Spencer and Charles Smyser appeared through counsel Michelle Stewart.[1]

This pretrial order supersedes all pleadings and controls the subsequent course of this case. It will not be modified except by consent of the parties and the Court's approval, or by order of the Court to prevent manifest injustice. See Fed. R. Civ. P. 16(d) & (e); D. Kan. Rule 16.2(a).

This is a civil-rights action under 42 U.S.C. § 1983. Plaintiff alleges that Defendants used excessive force against him on May 1, 2022. All other claims and defendants originally pleaded have been dismissed by prior order of the Court (Doc. 34).[2]

[1] Defendant City Commission of Lawrence, Kansas was dismissed 3/31/25. See Doc. 34.

[2] The Court dismissed Count I (First Amendment retaliatory arrest), Count II (Fourth Amendment unlawful arrest and failure to intervene), Count IV (Fourth Amendment malicious prosecution), and Count V (municipal liability under Monell), as well as Count III to the extent asserted against the Lawrence City Commission. *See* Doc. 34.

## 1. PRELIMINARY MATTERS.

**a. Subject-Matter Jurisdiction.** Subject-matter jurisdiction is invoked under 28 U.S.C. § 1331 and is not disputed.

**b. Personal Jurisdiction.** The Court's personal jurisdiction over the parties is not disputed.

**c. Venue.** Venue in this court is not disputed.

**d. Governing Law.** Subject to the Court's determination of the law that applies to the case, the parties believe and agree that the substantive issues in this case are governed by the following law:

Plaintiff's claims are governed by federal law.

## 2. STIPULATIONS.

The following facts are stipulated:

**1)** On May 1, 2022, Lawrence Police Department Officers, Austin Spencer, Charles Smyser and Joshua Doncouse responded to 1121 E. 13th Street, Apt. 85, Lawrence, Kansas following a 911 call reporting a domestic dispute.

**2)** At all relevant times, Sergeant Daniel Ashley, Officer Charles Smyser, Officer Austin Spencer and Officer Joshua Doncouse were sworn law-enforcement officers employed by the City of Lawrence Police Department acting under color of state law.

**3)** Plaintiff Anthony Lee Kennon was present at the scene.

**4)** Defendant Ashley placed Kennon under arrest.

The parties have stipulated to the admissibility of the following exhibits for purposes of summary judgment and trial:

**i.** Axon Video DanielAshley_202205010233 X60A41843

**ii.** Axon_Body_3_Video_2022-05-01_0140_X6039B3HV

**iii.** Axon_Body_3_Video_2022-05-01_0140_X6039B3LP

**iv.** Axon_Body_3_Video_2022-05-01_0140_X6039B4US

**v.** Axon_Body_3_Video_2022-05-01_0141_X60A1468C

**vi.** Axon_Body_3_Video_2022-05-01_0141_X6039B4X4

**vii.** Axon_Body_3_Video_2022-05-01_0250_X6039B3HV

**viii.** Axon_Body_3_Video_2022-05-01_0258_X6039B3HP

3. **FACTUAL CONTENTIONS.**

**a. Plaintiff's Factual Contentions.**

Plaintiff Anthony Lee Kennon contends that Defendants Daniel Ashley, Joshua Doncouse, Austin Spencer, and Charles Smyser used objectively unreasonable force against him on May 1, 2022. When officers first arrived, Plaintiff had visible injuries. The initial responding officers documented scratches, blood, and scrapes on Plaintiff and were unable to establish probable cause for domestic-violence-related charges against him during the initial response. Plaintiff contends the early portion of the encounter was being managed without arrest before Sergeant Ashley arrived. Plaintiff further contends that Defendant Ashley escalated the encounter immediately after arriving on scene. Plaintiff contends that the body-worn-camera evidence shows the initial responding officers were managing the encounter without arrest, that Plaintiff's conduct before arrest was verbal rather than physically threatening, and that Defendant Ashley placed Plaintiff under arrest only after warning Plaintiff not to challenge his officer and Plaintiff responded, in substance, "take me to jail." Plaintiff contends this sequence is relevant to escalation, credibility, motive, punitive damages, and the Graham totality-of-the-circumstances analysis.

Plaintiff further contends that Defendant Ashley did not timely prepare or submit a required use-of-force report documenting the neck/jaw/throat pressure and pain-compliance force visible on the body-worn-camera footage. Plaintiff contends that Ashley's initial reports and probable-

cause affidavit omitted that material use of force, and that Ashley documented use-of-force information only later, after Plaintiff filed formal complaints. Plaintiff contends this delayed and incomplete reporting violated LPD reporting policy, impaired meaningful force review, and is relevant to Defendants' credibility, intent, punitive damages, and the reasonableness of the force used. Plaintiff contends that his conduct before the arrest was primarily verbal perhaps profane, but not physically threatening in a manner that justified the force later used. Plaintiff further contends that Sergeant Ashley arrived late in the encounter, escalated rather than de-escalated the situation, and initiated the arrest after taking offense at Plaintiff's verbal criticism and profanity.

After Plaintiff was arrested, handcuffed, and placed in the patrol vehicle, Defendants removed him from the vehicle and placed him in a WRAP restraint system. Plaintiff contends that, during the restraint sequence, he was restrained or substantially restrained by multiple officers and was not fleeing. Plaintiff contends that any movement shown on the video during the challenged force was a reaction to pain or officer-imposed pressure, not active resistance justifying additional pain-compliance force. Plaintiff further contends that any claimed safety concern did not justify the degree and type of force used against him after officers had physical control over him. Plaintiff further contends that when Defendant Ashley ordered Plaintiff removed from the patrol vehicle, Plaintiff was not then banging his head against the vehicle divider, was not attempting to flee, and was not physically resisting officers. Plaintiff contends that he complied with the order to exit the patrol vehicle, came out of the vehicle without resistance, and did not physically resist placement in the WRAP restraint system. Plaintiff disputes Defendants' contention that he was actively resisting the WRAP application or that any conduct at the time of the force justified neck/jaw/throat or mandibular-area pressure.

Plaintiff contends that the body-worn-camera evidence shows force applied to Plaintiff's head, neck, jaw, throat, shoulder, back, and body during the WRAP-restraint sequence. Plaintiff contends that Defendant Ashley applied unreasonable neck/jaw/throat or mandibular-area pressure while Plaintiff was restrained or substantially restrained. Plaintiff further contends that Defendants Smyser, Spencer, and Doncouse participated in the challenged use of force by assisting in controlling Plaintiff's body, restraining him, placing him into the WRAP, and maintaining physical restraint while the challenged force was applied. Plaintiff's expert, Brent Turvey, Ph.D., is expected to testify that the body-worn-camera evidence, officer reports, deposition testimony, LPD policies, and related materials show that the force used against Plaintiff was excessive, unnecessary, inconsistent with accepted law-enforcement practices, and contrary to LPD policy and training. Plaintiff's expert is further expected to testify that the body-worn-camera footage shows out-of-policy neck-control force and out-of-policy pain-compliance force while Plaintiff was restrained or substantially restrained. Plaintiff further contends that Defendants' repeated description of the force as a "mandibular angle pressure point" is disputed and incomplete. Plaintiff contends that Defendant Ashley applied neck/jaw/throat pressure and pain-compliance force, including pressure beneath Plaintiff's ear or jawline, while Plaintiff was restrained or substantially restrained by multiple officers. Plaintiff contends that the force was not necessary to obtain compliance because Plaintiff was not then physically resisting, was not being given direct orders he was refusing, and was not capable of meaningful movement.

Plaintiff also contends that Defendants' reports, affidavit, and later explanations omitted, minimized, or failed to accurately disclose material force used against Plaintiff, including the neck/jaw/throat pressure and related force visible on body-worn-camera footage. Plaintiff contends that those omissions are relevant to Defendants' credibility, the objective reasonableness of the

force, intent, and punitive damages. Plaintiff disputes Defendants' contentions that Plaintiff posed an immediate threat justifying the force used, that Plaintiff actively resisted in a manner justifying the neck/jaw/throat pressure, that the force was required for safety, that the WRAP and pressure-point force were applied in a reasonable manner, and that Defendants' conduct was consistent with the Fourth Amendment.

Plaintiff does not contend that any reporting deficiency independently constitutes a Fourth Amendment violation. Plaintiff contends that the contemporaneous omission and later reporting of the challenged force bear on the credibility and reliability of Defendants' account and, where otherwise admissible, on punitive damages.

Plaintiff contends that the force was objectively unreasonable under the totality of the circumstances and the Graham factors because the alleged offense was minor, Plaintiff was not fleeing, Plaintiff was handcuffed and restrained or substantially restrained, and Plaintiff did not pose an immediate threat sufficient to justify the force used. Plaintiff further contends that Defendant Ashley had an undisclosed personal or familial connection to Plaintiff. Plaintiff contends that Ashley is married to Megan Walker, now Megan Ashley, whom Plaintiff knew from the foster household of Grady Walker, Ashley's father-in-law and Plaintiff's former foster father. Plaintiff further contends that Ashley later acknowledged that Plaintiff and Ashley's wife grew up together in a foster home. Plaintiff contends that this relationship was not disclosed in Ashley's reports, probable-cause affidavit, or later departmental records, and is relevant to Ashley's neutrality, motive, credibility, reporting omissions, punitive damages, and the totality of the circumstances.

Plaintiff further contends that punitive damages are warranted against Defendant Ashley because he acted with malice or reckless indifference to Plaintiff's Fourth Amendment rights by

escalating a verbal encounter, applying neck/jaw/throat or mandibular-area pain-compliance force while Plaintiff was restrained or substantially restrained, and omitting material force from his initial reports and probable-cause affidavit. Plaintiff further contends that punitive damages are warranted against Defendants Doncouse, Spencer, and Smyser because they acted with reckless indifference by physically restraining Plaintiff and maintaining physical control over him while the challenged force was applied.. Plaintiff further contends that he suffered physical pain and injury from Defendants' use of force, including pain and symptoms involving his head, neck, jaw, throat, shoulders, back, and body.

Plaintiff contends that the incident caused emotional distress, humiliation, mental anguish, post-traumatic symptoms, and aggravation of physical or emotional conditions. Plaintiff further contends that Defendants' restraint-based force inflicted severe mental anguish, dissociation, and post-traumatic symptoms because it directly echoed Plaintiff's prior trauma involving being tied down, sexually abused, and the violent death of his first cousin, Richard Settlemyre, who—along with Kennon—was subjected to extreme abuse before being decapitated and dismembered by John Williams. Plaintiff further contends that medical records, Plaintiff's testimony, and other damages evidence will support his claimed physical, emotional, psychological, dignitary, and loss-of-enjoyment damages. Plaintiff further contends that the incident caused or aggravated physical symptoms, including heart-related symptoms or aggravation, as supported by Plaintiff's testimony, medical evidence, and damages evidence. Plaintiff further contends that the criminal charges arising from the May 1, 2022 incident were dismissed by the State on December 21, 2022. Plaintiff contends the dismissal is relevant to Defendants' probable-cause narrative, credibility, the minor nature of the alleged offense, and the Graham totality-of-the-circumstances analysis.

**b. Defendants' Factual Contentions.**

On May 1, 2022, Lawrence Police Department ("LPD") Officers Charles Smyser, Austin Spencer and Joshua Doncouse were dispatched to 1121 E. 13th Street, Apt. 85, Lawrence, Kansas to respond to the domestic violence call from Destiny White involving Plaintiff. In her 911 call, Ms. White reported to Officer Smyser that Kennon shoved her and she shoved him back. Ms. White reported to Officer Smyser that Kennon grabbed her by the throat and shoved her onto the bed three times and that she attempted to grab Kennon while he shoved her, causing his shirt to rip and scratching him. Ms. White reported to Officer Smyser that the commotion woke up her son, Milz Davis. Ms. White reported to Officer Smyser that Kennon pushed her son onto the couch, pushed him into a doorway and pushed her son into another door. Ms. White reported to Officer Smyser that her son grabbed a tricycle to defend himself against Kennon.

While Officers Smyser, Spencer and Doncouse were present, Kennon began loading his belongings into Officer Spencer's police vehicle so Officer Spencer could give him a ride to another location. Officer Spencer informed Kennon that all of his belongings were not going to fit inside the police vehicle. Kennon told the Officers to "leave it right fucking here and give me my tools and I will find a ride." Kennon then started unloading his belongings and piling them on the sidewalk near Officer Smyser. Kennon wanted Ms. White to give him his tools, so Officer Smyser returned to the apartment to retrieve the tools. The tools Officer Smyser brought from the apartment were not the tools Kennon wanted returned and Kennon advised Officers that the tools were in the trunk of Ms. White's vehicle. Ms. White initially refused to allow Kennon access to the tools in her car.

Patrol Sergeant Daniel Ashley arrived to the scene at approximately 2:30 am to determine why multiple officers were still on scene. Kennon told Sergeant Ashley that he was "dumb, a

'stupid-ass' . . . 'a bitch,' [that he was] 'cowering down' to Destiny" [and she] 'isn't going to fuck you ever.'" During this time, Ms. White exited the apartment and came downstairs to the parking lot and unlocked the trunk of her vehicle. Officer Spencer stood near the trunk of Ms. White's vehicle as Kennon removed the tools. Kennon continued to remove his belongings from the trunk of Ms. White's car, all the while glaring at the Officers. Kennon told Officer Smyser that "he was never going to get with Destiny" and that he was "a little bitch ass cop and he needs to get his dick wet." Kennon throwing items, including an air pump and a level at Officer Smyser's feet, threatening: "nothin in this gonna hurt you is there." Sergeant Ashley warned Plaintiff not to challenge his officer again or else he would go to jail. Kennon responded "take me to jail." Sergeant Ashley then placed him under arrest for disorderly conduct. Kennon's arrest was supported by probable cause based on the totality of Kennon's conduct – his aggressive glaring, throwing items at Officer Smyser's feet, chesting-up to Officer Smyser, yelling and taunting Sergeant Ashley collectively constituted disorderly conduct pursuant to K.S.A. 21-6203.

After Sergeant Ashley arrested Kennon for disorderly conduct and placed him in handcuffs, Officer Doncouse placed Kennon inside Officer Spencer's police vehicle as Kennon continued to yell from the backseat. Once inside Officer Spencer's patrol vehicle, and before Officer Doncouse could put the seatbelt on, Kennon banged his head three times into the front Plexiglas divider. After the seatbelt was secured and the door to Officer Spencer's car was closed, Kennon repeatedly slammed his head against the inside of the vehicle with enough force to cause the parked vehicle to move. Kennon hit his head so hard against the front Plexiglas divider of Officer Spencer's patrol vehicle that the Plexiglas cracked. Kennon also kicked his knee against the front divider and was screaming loudly enough to be heard outside the police vehicle.

The Officers removed Kennon from the police vehicle and placed him into a wrap restraint system ("WRAP") for Kennon's safety and to prevent further damage to police property. Kennon posed an active safety threat to himself, was being restrained for his own safety and the WRAP device is an authorized safety tool. The WRAP device is designed for deployment when subjects are violent or combative and to limit violent/combative subjects from causing injury to themselves or others and to prevent violent/combative subjects from causing property damage by kicking. Even though Kennon was in handcuffs, he was still at risk of injuring himself as he was thrashing around in the backseat of Officer Spencer's vehicle. Kennon's actions in repeatedly banging his head against the Plexiglas with enough force to crack it as well as kicking the divider with his legs support use of the WRAP. The Officers followed the proper WRAP application protocol, which requires the subject to transition through staged positions as the leg restraints, chest harness and helmet are applied.

While Kennon was being placed in the WRAP, specifically as Officers were attempting to place the chest harness component of the WRAP, Kennon began to resist and threw his head back towards Sergeant Ashley. Sergeant Ashley told Kennon to "stop doing that" and Kennon did not comply. Sergeant Ashley then applied a mandibular angle pressure point technique while Kennon was actively resisting the completion of the chest restraint. Sergeant Ashley was trained and certified on the mandibular angle pressure point technique. The mandibular angle pressure point technique is an authorized and approved pain compliance tool pursuant to Lawrence Police Department ("LPD") Policy 300.3.4. The sequence of events – verbal command; continued resistance and then pain compliance application is precisely the expected and authorized framework described in LPD Policy 300.3.4.

The mandibular angle pressure point is located immediately behind the lower jaw, just

below and in front of the earlobe. The technique is performed by placing a finger or thumb behind the mandibular angle and applying direct, upward pressure. The mandibular angle technique produces sharp, localized pain that creates an involuntary compliance response without restricting airway, blood circulation to the brain, or causing structural injury to the head or vascular system. Upon successful application of the chest restraint, Sergeant Ashley released the mandibular angle pressure point. This is also consistent with LPD Policy 300.3.4. The mandibular angle was used for 14 seconds or less.

Sergeant Ashley prepared and signed his Probable Cause Affidavit on the day of Plaintiff's arrest, May 1, 2022, which details the probable cause to support charges of domestic battery, criminal damage, disorderly conduct and interference with law enforcement. The Douglas County District Attorney charged Plaintiff with domestic battery, battery, disorderly conduct, and interference with law enforcement.

Kennon filed complaints with LPD against Sergeant Ashley, Officer Smyser, Officer Spencer and Officer Doncouse. The LPD Office of Professional Accountability ("OPA") conducted an internal investigation, including an interview with Kennon, review of all videos from body worn cameras and an interview with Sergeant Ashley. Kennon rescinded his complaint against Officer Doncouse during his September 15, 2022 interview. Following review of the body worn cameras, OPA found no misrepresentations made by Officer Spencer and the allegation that Officer Spencer had misrepresented facts was exonerated. OPA found no evidence to show Officer Smyser used any force while assisting in securing Kennon into the WRAP and the allegation of excessive force was exonerated. OPA and Chief of Police Rich Lockhart determined that Sergeant Ashley's application of the mandibular angle did not violate department policy, and the allegation of excessive use of force was exonerated and the allegation

of discourtesy was unfounded. The exoneration finding meant that the investigation determined the force did occur, but was lawful and consistent with department policy and training. [3]

## 4. LEGAL CLAIMS AND DEFENSES.

### a. Plaintiff's Claims.

Plaintiff Anthony Lee Kennon asserts Count III of the Amended Complaint, a Fourth Amendment excessive-force claim under 42 U.S.C. § 1983, against Defendants Daniel Ashley, Joshua Doncouse, Austin Spencer, and Charles Smyser in their individual capacities.

Plaintiff does not contend in this surviving claim that the alleged unlawfulness of his arrest rendered all force impermissible. Rather, Plaintiff contends that each particular use and degree of force had to be objectively reasonable under the circumstances existing when it was applied. *Graham v. Connor*, 490 U.S. 386, 396–97 (1989); *Bruner v. Cassidy*, 163 F.4th 1315, 1321–23 (10th Cir. 2026). Thus, even assuming officers were justified in removing Plaintiff from the patrol vehicle or in employing some degree of force to place him in the WRAP restraint, those circumstances did not themselves authorize every additional use of force during the restraint sequence.

Plaintiff contends that Defendant Ashley applied unreasonable neck/jaw/throat or mandibular-area pain-compliance force while Plaintiff was handcuffed and restrained or substantially restrained by multiple officers, was not fleeing, did not pose an immediate threat sufficient to justify that force, and was not actively resisting in a manner requiring additional pain-compliance force. Plaintiff contends that any movement shown during the challenged force was a reaction to pain or officer-imposed pressure rather than active resistance justifying further force.

Plaintiff further contends that Defendants Doncouse, Spencer, and Smyser personally participated in the challenged use of force by physically controlling Plaintiff's body or limbs, restraining Plaintiff, assisting in the WRAP-restraint sequence, and maintaining physical restraint while the challenged force was applied. Plaintiff contends that each Defendant's own application or maintenance of force must be evaluated for objective reasonableness under the circumstances existing at the time.

### b. Defendants' Defenses.

1. As to Count III, to the extent Plaintiff alleges no force was allowed because Plaintiff should not have been arrested, Sergeant Ashley, Officer Doncouse, Officer Spencer and Officer Smyser are entitled to qualified immunity because probable cause existed to arrest Plaintiff on May 1, 2022.

[3] Plaintiff seeks to include generalized responses to Defendants' factual contentions and defenses. Defendants object. The objections are sustained. Plaintiff's position is adequately stated in his factual and legal contentions and replies to an opposing party's contentions and defenses are unnecessary. Any dispute concerning the admissibility of evidence can be raised later on appropriate motion.

2. As to Count III, to the extent Plaintiff alleges no force was allowed because Plaintiff should not have been arrested, Sergeant Ashley, Officer Doncouse, Officer Spencer and Officer Smyser are entitled to qualified immunity because they had, at minimum, arguable probable cause, and/or because no clearly established precedent put these individual defendants on notice that their conduct violated Kennon's constitutional rights.

3. As to Count III, Sergeant Ashley, Officer Doncouse, Officer Spencer and Officer Smyser are entitled to qualified immunity because their actions in arresting Plaintiff on May 1, 2022 and any use of force to effectuate the arrest were objectively reasonable in light of the totality of the facts and circumstances confronting them.

4. As to Count III, Sergeant Ashley is entitled to qualified immunity because his use of the mandibular angle pressure point technique was objectively reasonable in light of the totality of the facts and circumstances confronting him and/or because no clearly established precedent put Sergeant Ashley on notice that use of the mandibular angle technique violated Kennon's constitutional rights. *Zorn v. Linton*, 607 U.S. 568, 146 S. Ct. 926, 224 L.Ed.2d 400 (2026).

5. Count III fails as a matter of law because Sergeant Ashley, Officer Doncouse, Officer Spencer and Officer Smyser did not take any action that violated Kennon's Fourth Amendment rights.

6. Count III fails as a matter of law because under the totality of the circumstances, Sergeant Ashley, Officer Doncouse, Officer Spencer and Officer Smyser use of force was reasonable based on *Graham v. Connor*, 490 U.S. 386 (1989).

7. Count III fails as a matter of law as to all Defendants because Kennon was not passively non-compliant, he presented an objective safety risk while in the patrol vehicle necessitating use of the WRAP.

8. Count III fails as a matter of law as to all Defendants because Kennon was actively resisting placement of the chest harness during the WRAP application and he presented an objective safety risk necessitating use of the mandibular angle pressure point technique.

9. Count III fails as a matter of law as to Sergeant Ashley because Kennon received sufficient warning and an opportunity to comply prior to application of the mandibular angle pressure point technique.

10. Count III fails as a matter of law because Sergeant Ashley's use of the mandibular angle pressure point was reasonably justified based on Kennon's active resistance.

11. Plaintiff has suffered no damages, such that in the event a jury finds a constitutional violation, only nominal damages may be awarded.

12. Plaintiff is not entitled to punitive damages against the individual defendants based on claims in Count III of the complaint pursuant to 42 U.S.C. § 1983 because there is no evidence of conduct shown to be motivated by evil motive or intent or that involves reckless or callous indifference to the federally protected rights of others. *Searles v. Van Benner*, 251 F.3d 869, 879 (10th Cir. 2001).

13. Defendants deny that Plaintiff is entitled to costs, attorney's fees under 42 U.S.C. § 1988 or pre- and post-judgment interest under 28 U.S.C. § 1961.

**5. DAMAGES AND NON-MONETARY RELIEF REQUESTED.**

Plaintiff seeks compensatory damages against Defendants Daniel Ashley, Joshua Doncouse, Austin Spencer, and Charles Smyser, jointly and severally to the extent the jury finds the harm indivisible, or severally in such amounts as the jury finds appropriate. Plaintiff seeks compensatory damages in the amount of $3,500,000 for physical pain, physical injury, emotional distress, humiliation, mental anguish, psychological injury, post-traumatic symptoms, aggravation of physical or emotional conditions, dignitary injury, loss of enjoyment of life, and other damages caused by Defendants' unconstitutional use of force.

In the alternative, if the jury finds that a Defendant violated Plaintiff's Fourth Amendment rights but does not award compensatory damages for that violation, Plaintiff seeks nominal damages of $1.00 against each Defendant found liable.

Plaintiff seeks punitive damages against each Defendant individually as follows:

1. Against Defendant Daniel Ashley: $2,000,000;
2. Against Defendant Joshua Doncouse: $750,000;
3. Against Defendant Austin Spencer: $750,000;
4. Against Defendant Charles Smyser: $750,000.

Plaintiff's claimed compensatory and punitive damages total $7,750,000, exclusive of attorney's fees, costs, and interest. Nominal damages are sought only in the alternative as stated above..

Plaintiff also seeks approximately $13,500 in costs and $175,185 in reasonable attorney's fees incurred through August 18, 2026, with such fees and costs continuing to accrue. Plaintiff seeks reasonable attorney's fees pursuant to 42 U.S.C. § 1988, costs to the extent allowed by law, and the final amount of fees and costs to be determined by post-judgment motion. Plaintiff further seeks prejudgment and post-judgment interest to the extent allowed by law and all other relief the Court deems just and proper. Plaintiff does not seek non-monetary injunctive or declaratory relief.

**6. AMENDMENTS TO PLEADINGS.**

None.

**7. DISCOVERY.**

Discovery is complete.

Unopposed discovery may continue after the deadline to complete discovery so long as it does not delay briefing or ruling on dispositive motions or other pretrial preparations. Although discovery may be conducted beyond the deadline to complete discovery if all parties agree to do so, under these circumstances the Court will not be available to resolve any disputes that arise during the course of such extended discovery.

**8. MOTIONS.**

**a. Pending Motions.** None.

**b. Additional Pretrial Motions.**

After the pretrial conference, the parties intend to file the following motions:

1. Defendants' Motion for summary judgment
2. Defendants' Motion to Exclude Expert Witness Testimony
3. Plaintiff and Defendants Motions in Limine

The dispositive-motion deadline, as established in the scheduling order and any amendments, is **September 18, 2026**. The parties should follow the summary-judgment guidelines on the Court's website:

https://ksd.uscourts.gov/sites/ksd/files/Summary-Judgment-Guidelines%202023.pdf

Principal briefs in support of, or in response to, summary judgment motions must not exceed 40 pages and replies must not exceed 15 pages. *See* D. KAN. RULE 7.1(d)(2). Any motion to exceed these page limits or for an extension of briefing deadlines must be filed at least three days before the brief's filing deadline. *See* D. KAN. RULE 6.1(a), 7.1(d)(4).

**c. Motions Regarding Expert Testimony.** All motions to exclude the testimony of expert witnesses pursuant to Fed. R. Evid. 702-705, *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999), or similar case law, must be filed in accordance with the dispositive-motion deadline stated above.

**9. TRIAL.**

The trial docket setting, as established in the scheduling order and any amendments, is **May 17, 2027, at 9:00 a.m., in Topeka, Kansas**. This case will be tried by jury. Trial is expected to take approximately 5 days. The Court will attempt to decide any timely filed dispositive motions approximately 60 days before trial. If no dispositive motions are timely filed, or if the case remains at issue after timely dispositive motions have been decided, then the trial judge may enter an order or convene another pretrial conference to set deadlines for filing final witness and exhibit disclosures, exchanging and marking trial exhibits, designating deposition testimony for presentation at trial, motions in limine, proposed instructions in jury trials, and proposed findings of fact and conclusions of law in bench trials.

**10. ALTERNATIVE DISPUTE RESOLUTION (ADR).**

The status of settlement negotiations is as follows: The parties exchanged settlement proposals, but were unsuccessful. The parties currently believe the prospects for settlement of this case are poor and they do not believe that court-ordered ADR would be helpful at this time. Given the significant legal issues that may be dispositive of the litigation, if mediation is ordered, Defendants request that it occur after the Court has decided dispositive motions. The Court discussed mediation with the parties and does not enter a mediation deadline at this time. Should the claim survive summary judgment, the parties are to confer and schedule a mediation if appropriate.

The parties are reminded that, under D. Kan. Rule 40.3, they must immediately notify the Court if they reach an agreement that resolves the litigation as to any or all parties. Jury costs may be assessed under this rule if the parties do not provide notice of settlement to the Court's jury coordinator at least one full business day before the scheduled trial date.

**IT IS SO ORDERED.**

Dated August 25, 2026, at Wichita, Kansas.

/s/ BROOKS SEVERSON
Brooks G. Severson
United States Magistrate Judge